## BALTIMORE & OHIO RAILROAD COMPANY *v.* TOWN OF WHITING.

[No. 20,051.   Filed October 6, 1903.]

MUNICIPAL CORPORATIONS.—*Power of Town to Regulate Speed of Railroad Trains.*—Under §4404 Burns 1901, and clauses 4, 6, 9, and 16 of §4357 Burns 1901, incorporated towns have the power to pass reasonable ordinances regulating the speed of railroad trains within their corporate limits. *p. 229.*

CONSTITUTIONAL LAW.—*Act Conferring Judicial Power on Town Clerk. —Title.*—The act of February 28, 1901 (Acts 1901, p. 57), relating to town officers, and conferring upon the town clerk the powers of a justice of the peace, has the following title: "An act concerning town officers." *Held,* that the title is sufficient, and that the act is not unconstitutional as being in conflict with §19 of article 4, of the state Constitution, providing that every act shall embrace but one subject, which must be expressed in the title. *pp. 230-233.*

SAME.—*Title of Act.*—The Constitution does not require that the title of an act shall specify each particular or detail or feature of the matter contained in the act, or that it shall contain an index thereto or an abstract thereof. *p. 232.*

SAME.—*Act Conferring Judicial Power on Town Clerk.*—The act of February 28, 1901, which, among other provisions, confers judicial powers upon the clerk of a town, is not in conflict with article 3 of the state Constitution providing for three departments of government, and prohibiting a person charged with official duties under one department from exercising any of the functions of another; since the administrative duties of a town clerk are not such as come within the executive department of the State. *pp. 233-238.*

COURTS.—*Town Clerk.*—The act of February 28, 1901, conferring upon the town clerk "all the powers of a justice of the peace, as defined by law," constitutes the town clerk a court. *pp. 238-241.*

From Lake Circuit Court; *W. C. McMahan,* Judge.

Action by the town of Whiting against the Baltimore & Ohio Railroad Company. From a judgment of the circuit court affirming a judgment of the town clerk in favor of plaintiff, the defendant appeals. *Affirmed.*

*T. J. Wood* and *Pam, Calhoun & Glennon,* for appellant. *C. W. Miller,* Attorney-General, *C. C. Hadley, W. C. Geake, L. G. Rothschild, E. D. Salsbury, B. F. Ibach* and *J. G. Ibach,* for appellee.

MONKS, C. J.—In 1902 the board of trustees of the town of Whiting passed an ordinance regulating the speed of railroad trains within the corporate limits of said town and fixing penalties for its violation. An action was commenced before the clerk of said town by appellee against appellant to collect said penalties for an alleged violation of said ordinance. A trial of said cause resulted in a judgment against appellant. On appeal to the court below, a trial again resulted in a judgment against appellant.

Appellant insists (1) that said ordinance is not valid because "there is no statute authorizing incorporated towns to regulate the speed of trains in the corporate limits;" (2) that said town clerk had no jurisdiction to try said cause, for the reason that the act approved February 28, 1901 (Acts 1901, p. 57, §§4346-4346d Burns 1901), so far as it attempts to confer judicial powers upon clerks of incorporated towns, is unconstitutional and void.

It is evident that under §4404 Burns 1901 and clauses four, six, nine, and sixteen of §4357 Burns 1901, incorporated towns have the power to pass reasonable ordinances regulating the speed of railroad trains within their corporate limits. *Scudder* v. *Hinshaw,* 134 Ind. 56, 58-60; *Nealis* v. *Hayward,* 48 Ind. 19; *Pittsburgh, etc., R. Co.* v. *Town of Crown Point,* 146 Ind. 421, 423-427; Dillon, Mun. Corp. (4th ed.), §§315, 393; Smith, Mun. Corp., 1356, 1357; Elliott, Roads & Sts. (2d ed.), §§452, 807; Elliott, Railroads, §1082. Moreover, the legislature in §§2299, 5307 Burns 1901, §§2178, 4020 R. S. 1881 and

Horner 1901, expressly recognized the power of incorpo=
rated towns to pass such ordinances.

Appellant's first contention, under its second point, is
that the part of said act conferring judicial power on town
clerks is unconstitutional, because the title of the act, "An
act concerning town officers," is insufficient to include the
grant of such power.    Section 19, of article 4, of the Con-
stitution provides:    "Every act shall embrace but one sub-
ject and matters properly connected therewith; which sub-
ject shall be expressed in the title.    But if any subject
shall be embraced in an act which shall not be expressed
in the title, such act shall be void only as to so much thereof
as shall not be expressed in the title."    The act in question
is about town officers.    No other subject is mentioned.
The question is therefore whether or not the granting of
judicial power to a town officer, the clerk, is a matter prop-
erly connected with such subject.    Naturally, among the
matters that would be looked for under the head of town
officers, would be eligibility, appointment or election, qual-
ifying and induction into office, term of office, rights, pow-
ers, duties, liabilities, fees, and compensation.    These mat-
ters are properly connected with the subject.    In the first
section of the act in question the matters mentioned are
the election and term of town officers.    The second section
relates to the powers and duties of town clerk.    It is pro-
vided in said section among other things that "It shall
be his duty to see that the laws of the State and the ordi-
nances of the town are faithfully executed within his juris-
diction.    He shall possess all the powers of a justice of
the peace, as defined by law.    He shall hold court every
day (Sunday excepted) at a place to be named by the town
trustees.    He shall be a conservator of the peace, and as
such shall have, within the town limits and within the town-
ship or townships within which such town is situated, the
powers conferred upon justices of the peace for all pur-
poses.    While sitting as a court he shall have exclusive

jurisdiction of all prosecutions for violation of the ordinances of the town; and he shall have, within the limits of such township or townships, the jurisdiction and powers of a justice of the peace in all matters, civil and criminal, arising under the laws of this State; and for crimes and misdemeanors his jurisdiction shall be coextensive with the county or counties in which such town is situated: Provided, that in trials before him he shall have equal but not higher powers than those of a justice of the peace. In all actions before a town clerk either party may have a trial by jury, a change of venue to a justice of the peace, and an appeal to the court of superior jurisdiction, under the same restrictions and in the same manner as is provided for appeals from justices' courts. The same rules of pleading and practice shall be observed by such town clerk in all trials as are provided by law for the court of a justice of the peace. The town clerk shall give bond payable to the State of Indiana in a sum to be fixed by the town board at not less than $2,000, the bond to be approved by the clerk of the circuit court, with freehold surety, conditioned for the faithful performance of his duties as town clerk, and of all other duties he may be required to perform, and shall file the same with the clerk of the circuit court within the time provided by law for the qualification of justices of the peace. All fines and penalties collected by him shall be paid to the treasurer of the town within one month after the same have been received by him except when otherwise directed by the acts defining the duties and powers of justices of the peace, in which case he shall pay all fines and forfeitures collected by him for violations of the penal laws of the State in the same manner and under the same conditions that justices of the peace are required by law to do." The third section provides that "The town clerk shall keep a docket, as justices of the peace are required by law to do. He shall be entitled to the same fees in criminal and other cases, and for all his official acts,

as are given by law to justices of the peace. In case of a vacancy in the office of town clerk by death, resignation or otherwise, the town trustees shall immediately elect a successor, who shall, upon taking the oath and on giving bond, take charge of the town clerk's docket and other papers and records, and serve until the next town election." The fourth section confers the power to administer oaths, take depositions, and the acknowledgment of instruments required by law to be acknowledged. The fifth requires the town clerk to procure and use an official seal. The sixth relates simply to the duties of town marshal. It is clear that each provision of said act relates to matters properly connected with the subject "town officers."

As was said in *Bright* v. *McCullough,* 27 Ind. 223, 226, and *Shoemaker* v. *Smith,* 37 Ind. 122, 133: "The Constitution does not assume to divide the general scope of legislation, and classify the parts under particular heads or subjects, but, of necessity, has left that power to be exercised by the legislature, as it, in its wisdom and discretion, shall deem proper. The Constitution assumes that different subjects of legislation do exist, and requires that each act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title. The purposes of the provision, in view of the evils intended to be guarded against, can only be effected by requiring that the subject expressed should be reasonably specific, or, in other words, should be such as to indicate some particular branch of legislation, as a head under which the particular provisions of the act might be reasonably looked for."

The Constitution does not require that the title of the act shall specify each particular or detail or feature of the matter contained in the act or that it shall contain an index thereto or an abstract thereof. *Maule Coal Co.* v. *Partenheimer,* 155 Ind. 100, 105-107; *Chicago, etc., R. Co.* v. *State, ex rel.,* 153 Ind. 134, 142; *Lewis* v. *State,*

148 Ind. 346; *State* v. *Gerhardt,* 145 Ind. 439, 459, 33 L. R. A. 313, and cases cited; *Central Union Tel. Co.* v. *Fehring,* 146 Ind. 189, 191; *State* v. *Arnold,* 140 Ind. 628; *State, ex rel.,* v. *Kolsem,* 130 Ind. 434, 444, 14 L. R. A. 566; *Benson* v. *Christian,* 129 Ind. 535, 538, 539; *City of Indianapolis* v. *Huegele,* 115 Ind. 581, 590; *Barnett* v. *Harshbarger,* 105 Ind. 410, 411; *Warren* v. *Britton,* 84 Ind. 14, 23; *Shoemaker* v. *Smith,* 37 Ind. 122; *Bright* v. *McCullough,* 27 Ind. 223; *Walker* v. *Dunham,* 17 Ind. 483.

Acts have been passed conferring judicial powers upon mayors of cities, since the adoption of the present Constitution, under titles no more comprehensive than the one under consideration. 1 R. S. 1852, pp. 203, 206, 207; Acts 1857, pp. 42, 46, 47; 1 G. & H., pp. 216, 219; Acts 1867, pp. 33, 37, 38.

Appellant next insists that that part of said act conferring judicial powers upon town clerks is unconstitutional, because it is an attempt to confer judicial power upon an administrative officer, which is a violation of article 3 of the Constitution, which provides that "The powers of the government are divided into three separate departments; the legislative, the executive, including the administrative, and the judicial; and no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in this Constitution expressly provided." This provision of the Constitution relates solely to the state government and officers charged with duties under one of the separate departments of the State, and not to municipal governments and officers. The executive and administrative duties of mayors of cities and clerks of towns and cities are not such as come within the executive and administrative department of the state government. *Waldo* v. *Wallace,* 12 Ind. 569, 571-585; *City of Terre Haute* v. *Evansville, etc., R. Co.,* 149 Ind. 174, 181-186, 37 L. R. A. 189; *State, ex rel.,* v. *Kirk,*

44 Ind. 401, 15 Am. Rep. 239; *Mohan* v. *Jackson,* 52 Ind. 599; *Uridias* v. *Morrill,* 22 Cal. 473, 477, 478; *People* v. *Provines,* 34 Cal. 520, 538; *Santo* v. *State,* 2 Iowa 165, 220, 63 Am. Dec. 487, 516; *Gray* v. *State,* 2 Harr. (Del.) 76; *State* v. *Wilmington City Council,* 3 Harr. (Del.) 294; *People, ex rel.,* v. *Wilson,* 15 Ill. 388; *Hutchings* v. *Scott,* 9 N. J. L. 218.

This court held in *Waldo* v. *Wallace, supra,* that the mayor of a city, under the act of 1857 (Acts 1857, p. 42, §8), possessed executive, administrative, and judicial powers, but that his executive and administrative duties were not within the executive and administrative departments of the state government, and that he might discharge such executive, administrative, and judicial duties without violating said article of the Constitution. This court said at page 578: "If all the official duties, with which he was charged, are to be classed within the one or the other of those departments, then it is too clear, it appears to us, to require argument, that he had the right to exercise official duties in but one of the departments; and any attempt to require him to discharge duties, at the same time, in another of the departments of the government, would be inoperative. In other words, if he was, as averred, elected to the office of mayor, the legal and appropriate duties of which are within one of these great departments, and of an executive and adminstrative character, and he should be required by statute, whilst acting in that capacity in the discharge of those duties, to exercise functions of a character falling within the judicial department, such statute would be simply invalid—one that he might, and should, disregard—just as an officer in the judicial department of the State might disregard any attempt to charge him with official duties of the legislative department. But if the executive and administrative duties with which he was officially charged, should not be considered as within either of the departments of the state government, because

he was merely, in that respect, an officer of a municipal corporation, in that case he might appropriately discharge all those duties at the same time. After much consideration, we are of opinion that the executive and administrative duties of Wallace were not such as come within those departments of the state government, as established by the Constitution, and that he was consequently, left free to be charged with official duties under either of the other departments; that he was so charged with, and took upon himself, the duties of a judicial character before referred to, not as incidental to his office of mayor, but as separate and independent duties; and that during the term for which he undertook thus to discharge judicial functions, he was ineligible to the office of sheriff."

In *State, ex rel.,* v. *Kirk,* 44 Ind. 401, at page 406, this court said: "The office of councilman is an office purely and wholly municipal in its character. He has no duties to perform under the general laws of the State. The State has enacted a law applicable to all cities which may organize under it. The inhabitants of the particular locality, after having taken the other necessary steps for an organization, elect the designated number of councilmen, who have the power to enact by-laws, and do such other acts and perform such other duties as pertain to their office in the municipality. These powers and duties of councilmen are beyond and in addition to any acts, powers, and duties performed by officers provided for under the state government. As was said by Perkins, J., in *Waldo* v. *Wallace,* 12 Ind. 569, 'The powers which are exercised by a city government are, it thus appears, superadded to those exercised by the State in the same locality.' "

In *Mohan* v. *Jackson,* 52 Ind. 599, the question was whether one who had been elected and qualified as a justice of the peace was eligible to the office of city clerk under §16, article 7, of the state Constitution. This court said at page 600: "We are of the opinion that the office of

city clerk is not an office within the meaning of this section."

In *Uridias* v. *Morrill,* 22 Cal. 473, 477, under a constitution containing substantially the same provision as article 3 of the Constitution of this State, it was held that there was nothing in the state constitution that prohibited the legislature from declaring the mayor of a city to be *ex officio* a justice of the peace, and that under such a law the same person may constitutionally exercise the functions both of mayor and justice of the peace. *In re Guerrero,* 69 Cal. 88, 100, it was said: "The fact that the same person officiated as mayor, and as mayor presided in the local legislative body which passed the ordinances, did not divest him of his authority under the charter to act as the judicial officer of the court. The provisions of the charter which made the mayor of the city a component part of the council and '*ex officio* city judge' are not in conflict with the constitution."

In *Santo* v. *State,* 2 Iowa 165, 220, 63 Am. Dec. 487, 516, the court said: "The objection intended is, that the mayor is an executive officer, and that judicial authority is conferred upon him, in conflict with that provision of the constitution which says that no person charged with the exercise of powers properly belonging to one of these departments—the executive, the legislative, or the judicial—shall exercise any function appertaining to either of the others. These departments, are the departments of the government of the state of Iowa. The mayor of the city of Keokuk is not a part of the government of Iowa. He exercises none of the functions belonging to that department. Whatever executive offices he may perform, pertain to him only as an officer of that corporation. * * * Similar provisions exist in the constitutions of all, or nearly all, the other states, and yet from time immemorial, similar powers have been conferred upon the mayors of cities."

The duties of town clerks at the time the act was passed

were prescribed by statute as follows: "The clerk of such town shall have custody of the records, books and papers of the board of trustees, and shall attend all meetings and record the proceedings of said board, and shall perform all other duties appertaining to his office and required of him by the by-laws." §4346 Burns 1894, §3324 R. S. 1881 and Horner 1897. What executive or legislative duty or function is the clerk charged with under this section or under the act in controversy here that appertains or belongs to the executive or legislative department of the State? If there is no such duty, then the legislature has the authority to confer upon town clerks judicial power, as provided in said act of February 28, 1901 (Acts 1901, p. 57).

In *City of Terre Haute* v. *Evansville, etc., R. Co.,* 149 Ind. 174, 37 L. R. A. 189, this court, after reviewing the various acts conferring upon the judges of circuit courts powers that were not judicial, said, at page 185: "While the powers conferred by the foregoing acts of the legislature upon the judges in this State are not strictly judicial, yet they are not such as belong to either the executive or legislative departments of the state government, and are not therefore within the inhibition of article 3 of the Constitution."

The Constitution of 1816 contained substantially the same provisions as article 3, *supra.* R. S. 1843, p. 44, Art. 2. The legislatures of the State under said Constitution of 1816 and the present Constitution have passed many acts conferring upon presidents of towns, and mayors, recorders, and marshals of towns and cities, judicial powers. Lafayette, president, Acts 1834, p. 141, §12; Newport, president, Local Laws 1835, p. 133, §10; Leavenworth, president, Local Laws 1835, p. 116, §14; Rome, president, Local Laws 1836, p. 26, §11; Vincennes, president, Local Laws 1836, p. 31, §13; New Albany, recorder, Local Laws 1836, p. 76, §19; Evansville, president, Local

Laws 1836, p. 83, §15; Bloomfield, president, Local Laws 1837, p. 20, §14; Rockport, president, Local Laws 1838, p. 89, §11; Logansport (city), mayor, Local Laws 1838, p. 111, §19; Terre Haute (town), mayor, Local Laws 1838, p. 34, §18; Indianapolis (town), president, Local Laws 1838, p. 25, §8; Jeffersonville (town), mayor, Local Laws 1839, p. 18, §17; Mount Vernon (town), president, Local Laws 1847, p. 197, §27; Point Commerce (town), marshal, Local Laws 1846, p. 337, §5; Peru (town), mayor, Local Laws 1848, p. 10, §7; Rising Sun (city), mayor, Local Laws 1848, p. 77, §4; Madison (city), mayor, Local Laws 1848, p. 89, §20; Washington (town), mayor, Local Laws 1848, p. 361, §4; Clinton (town), president, Local Laws 1848, p. 285, §23; Huntington (town), mayor, Local Laws 1848, p. 487, §4; 1 R. S. 1852, p. 206, §18; Acts 1857, p. 42, §18; 1 G. & H., p. 219, §18, being §17 of the act of 1867, Acts 1867, p. 33; Acts 1893, p. 202, §45.

Under the doctrine of practical construction it would seem that the question presented concerning the power of the legislature to confer judicial powers upon town and city officers not charged with any duties under the executive or legislative departments of the state government should be regarded as settled. *City of Terre Haute* v. *Evansville, etc., R. Co.*, 149 Ind. 174, 189, 37 L. R. A. 189, and cases cited.

The legislature having conferred upon town clerks powers which are unquestionably judicial in their nature, and having invested them with the paraphernalia of a court, they have created a court, although they have not in terms said so.

Appellant contends that the act does not create the town clerk a court. Neither do the acts of the legislature conferring judicial power upon mayors of cities designate or declare in terms that they are courts, but under such acts they have been held by this court to be courts. *Waldo*

v. *Wallace,* 12 Ind. 569, 578-584; *Gulick* v. *New,* 14 Ind. 93, 98-100, 104, 77 Am. Dec. 49.

In *Waldo* v. *Wallace, supra,* at page 583, Perkins, J., said: "So the mayor is made, by the law, a judicial officer of the State and of the city; and if this can be done legally, then Wallace was, while mayor, a judicial officer of the State, and ineligible to the office of sheriff. The Constitution provides that the judicial power of the State shall be vested in such courts as the legislature shall create, of which the supreme and circuit courts shall be two; and it further provides that justices of the peace shall be elected, but not that they shall exercise judicial power. It will be observed that the judicial power is vested in courts, not in officers. An officer may not necessarily be a court. A justice of the peace is not necessarily a court. He is not a court when elected, simply by virtue of his election, and is not vested, by his election simply, with judicial power. But if the legislature, after or before his election, vest judicial power in that officer, as such, the exercise of which is made the chief and permanent duty of his office, he thus becomes a court. A court is a tribunal charged, as a substantive duty, with the exercise of judicial power; and a judicial officer is the person appointed to exercise that power. These definitions may not be, and it is admitted are, probably, not complete. But they are sufficiently so for the purposes of this case. A judge will be none the less a judicial officer because some duties he may have to perform are administrative in their character; nor will an administrative become a judicial officer, simply because some acts which he may be required to perform may be, to some extent, judicial in their character. The duties of Wallace, as a state officer, were substantially, indeed were entirely, judicial, were continuous for his official term, were discharged in the form and with the effect of judicial proceedings in the other courts

of the State. A word as to the mode in which the city court is created. The Constitution, as we have seen, gives the legislature unrestricted power in the creation of courts, and points out no mode of filling them with officers, except as to three, viz., the Supreme and circuit courts, and justices of the peace. Others, the legislature may create in such mode, and vest with such portion of the judicial power as, within the provisions of the Constitution, is deemed advisable. The judges of these courts may be created by election or otherwise. And the judges in such courts will be judicial officers, under the disabilities of the Constitution. In this case, Wallace was a judicial officer under the State, was elected in a manner which, under the unrestricted power of creating courts conferred by the Constitution, the legislature might adopt."

True, said act of 1901 does not say the clerk is a court, but it confers upon him "all the powers of a justice of the peace, as defined by law;" makes him a conservator of the peace, as other judicial officers of the State; gives him exclusive jurisdiction of all prosecutions for violations of the ordinances of the town; defines his jurisdiction and powers in both civil and criminal matters; provides for a change of venue; gives the rules of procedure, pleading, and practice; provides for an appeal; fixes his bond; says how he shall account for the fines, penalties, and forfeitures collected; requires him to keep a docket as justices of the peace do; gives him the same fees as a justice of the peace; empowers him to administer oaths; requires him to procure, possess, and use a seal; and makes the marshal the officer who shall serve all writs and processes issued by him. What more is needed to constitute a court? As was said in *Steamboat Northern Indiana* v. *Milliken,* 7 Ohio St. 383, "The acts of legislation do not designate mayors of cities as 'courts,' nor specifically declare them to be 'established' as such, but they create the office, provide for the election of the officer, and confer

on him judicial powers and functions; and, if the act be passed in conformity with the provisions of the constitution, authorizing the establishment of 'other courts,' it is enough."

In *Malone* v. *Murphy,* 2 Kan. 250, the jurisdiction of the mayor was objected to for the reason that the statute attempted to confer judicial powers without, in terms, creating a court. The court there said: "The mayor may use all the machinery necessary to hold an offender to bail that may be employed by a justice of the peace. The provisions of the code of criminal procedure apply in terms to both. The mayor is authorized to administer oaths, hear complaints, issue process, subpoena witnesses, take testimony, and hold to bail; and yet we are asked to say that such a tribunal is not a court because the act of the legislature does not in terms style it a court. We think we can not adopt such a construction without sacrificing substance to technicality. When the mayor is sitting for the examination of an offender against the laws of the state, the tribunal is a court. In the case at bar, the mayor had jurisdiction of the subject-matter, had power to proceed in it, and the proceeding was a prosecution."

In *Prell* v. *McDonald,* 7 Kan. 426, 447, it is said: "It is not necessary that the legislature, in order to create a court, or to confer judicial power, should first in terms create a court. * * * Whenever the legislature confers upon any board or officer powers which are unquestionably judicial in their nature, and when they also invest such board or officer with all the instruments and paraphernalia of a court, they undoubtedly create a court although they do not in terms say so."

It is clear that the act of February 28, 1901 (Acts 1901, p. 57, §§4346-4346d Burns 1901), created a court. The legislature having by said act created a court, it is evident that *Shoultz* v. *McPheeters,* 79 Ind. 373, *Gregory* v. *State,*

Cleveland, etc., R. Co. v. Stewart.

*ex rel.,* 94 Ind. 384, 48 Am. Rep. 162, *State, ex rel.,* v. *Johnson,* 105 Ind. 463, *State, ex rel.,* v. *Noble,* 118 Ind. 350, 4 L. R. A. 101, 10 Am. St. 143, and cases of that class, holding that judicial power can only be conferred upon courts, have no application here.

Judgment affirmed.