KEANE *v.* REMY, ELECTION COMMISSIONER, ET AL.
KEANE *v.* HOLMES, ELECTION COMMISSIONER, ET AL.

[No. 25,788 and 25,789. Filed September 24, 1929.]

*Samuel Ashby, Clinton H. Givan* and *Sumner Clancy*, for appellant.

*Charles E. Cox, Fred C. Gause, Ralph Kane* and *Taylor Groninger*, for appellees.

TRAVIS, J.—These are suits in equity to enjoin the defendants in case No. 25,788, acting as the board of election commissioners under the act here in question, "An Act to provide alternative forms of government for cities adopting the same," approved March 10, 1921, Acts

1921, ch. 218, p. 594, from expending moneys of the city of Indianapolis, contracting debts for the printing of ballots, books, pamphlets, etc., as prescribed by the law for the holding of an election under this act on November 5, 1929, for the purpose of electing city commissioners under the city-manager form of government. Appellees, in cause No. 25,788, demurred to the complaint, which demurrer was sustained by the court, and appellants refused to plead further; and standing upon their complaint, judgment was rendered for appellees, from which appellant appealed.

In case No. 25,789, appellant sought to enjoin appellees from proceeding under the City Manager Law (Acts 1921, ch. 218, p. 594) from taking any steps to expend funds of the city or incur debts against the city for the printing of ballots, affidavits, books, pamphlets, and from taking any steps in giving notice of any general municipal election to be held under said act; and that appellees be required to permit appellant to vote on November 5, 1929, for the office of mayor, councilmen and city clerk of the city, and that they be required to perform their duty as election commissioners under and by virtue of the act concerning municipal corporations approved March 6, 1905, and all acts amendatory thereto, and that they be permanently enjoined from proceeding under the alleged invalid law entitled: "An Act to provide for alternative forms of government in cities adopting the same." (Acts 1921, *supra.*) The sole issue decided was whether or not appellant was entitled to have an interlocutory injunction and a mandatory injunction as prayed. Upon the submission of the cause, the only evidence presented was the verified complaint of appellant introduced in his behalf. The judgment of the court, entered June 12, 1929, was that the temporary injunction prayed be denied and refused, from which

judgment appellant appeals, which appeal was perfected June 27, 1929, and ordered submitted by this court July 21, 1929.

These cases present the same question, whether or not the act to provide alternative forms of government for cities adopting the same, is impossible of performance and unconstitutional. They are, therefore, consolidated upon appeal by the court.

Appellant's crucial proposition in each case respectively is that the act (Acts 1921, ch. 218, p. 594) is invalid and violates the Constitution. It is claimed in each case under this proposition that several of the sections among the 69 sections which compose the act, are invalid, unconstitutional, and therefore void. For the sake of these appeals, it is necessary to consider only §3 of the act.

Before the special election to determine whether the city government should be changed may be ordered by the legislative authority of the city, as provided by §4 of the act, the clerk of the city must have certified to such legislative authority that a sufficient petition as required by §3 of the act has been filed with him, requiring that the question of adoption of such manager form of government be submitted to the electors of the city. Such election was held in the city June 21, 1927, and it is alleged that the appellees claim and assume that the city adopted the city-manager form of government as provided in the act at such election. Such petition, as required by §3 of the act, to be effective must be signed by electors of the city equal in number to at least 20 per cent of those who voted at the last preceding municipal general election, and it is averred that, at the city election held in 1925, there were to exceed 95,000 votes cast for the office of mayor. It was necessary, therefore, that a petition requesting such election be filed with the city clerk, signed by electors of the city in a number at

least to equal 19,000. The petition, according to §2 of the act, is addressed to the council (common council) or other legislative body of the city. But before such petition can become a foundation for action in relation thereto by such legislative body to order a special election, as provided by §4, jurisdiction is given to the clerk of the city to determine the sufficiency of such petition. He shall, within five days after such petition was filed with him, complete an examination to determine whether it is signed by a sufficient number of qualified electors, and, upon his finding and judgment that such petition has been so signed, his certificate as the result of such finding and judgment shall, with the petition itself, be sufficient foundation for the action of the legislative body of the city to order the special election, as provided by §4 of the act.

The complaint challenges the action of the clerk of the city in certifying to the legislative body of the city that the petition had been signed by a sufficient number of qualified electors, for the reason that the work necessary for such clerk of the city to perform in determining whether such 19,000 electors were qualified or not, is an impossible requirement. The qualification of an elector in this state, as required by the Constitution (Art. 2, §2) is that he must be: (1) A citizen of the United States; (2) of the age of 21 years and upwards; (3) who shall have resided in the state during the six months; (4) and in the township 60 days; and (5) in the ward or precinct 30 days, immediately preceding an election. Unless a citizen possesses these requirements, he is not entitled to vote, and thereby is not an elector within the meaning of §3 of the act which provides who are qualified to sign such petition. By the wording of §3 in relation to this point, it is the mandatory obligation of the clerk of the city to determine whether each one of the persons who signed

such petition is a qualified elector. Such qualification includes the five things mentioned in the Constitution as above set forth. At no place in the act is the judicial machinery set up which determines a mode of procedure necessary for the clerk of the city to follow to reach a determination as required by the act upon which he is to base his certificate. Granting that the clerk, in the absence of a method of procedure in the act, may prescribe a method of procedure himself, such procedure must be reasonable and sufficient to attain the end sought by the act, which is, that each petitioner must be a qualified elector, and that a sufficient number of such petitioners to number 20 per cent or more of those who voted at the last preceding general municipal election must have signed such petition, in order to invest the clerk with power to certify the petition to the legislative body of the city. If it be granted that the clerk was able mentally and physically to continue this examination of the petition, as required by the act, for five days without sleep or nourishment, he would have 120 hours, or 7,200 minutes, in which to perform this duty. Under such a schedule of work, for every minute of the 7,200 minutes, he must examine and determine whether or not two and sixty-three hundredths petitioners are qualified as such under the requirements provided by the constitution. If he worked but 12 hours a day in such examination of such petition, it would be necessary for him to pass upon the petitioners at the rate of more than five a minute. It is a matter of common knowledge, of which the court may take notice, that the work required of the clerk of the city in examining the petition in the case at bar, as he is by the law required to do, is a mental and physical impossibility.

The act of determining whether a petitioner is a qualified elector or not, and deciding upon such determination

whether or not he should be counted as one of the 20 per cent necessary to prevail, is judicial. There must be a finding concerning the qualifications of the petitioner under the Constitution upon which is based the conclusion or judgment whether his name should be counted or not be counted. These acts are in no sense ministerial. Ministerial functions do not empower a public officer to adjudge upon the matter before him. But, by virtue of §3 of the act, he was clothed with the judicial character when acting by the authority enacted by that section, which authority the Legislature was empowered to confer. *Baltimore, etc., R. Co.* v. *Town of Whiting* (1903), 161 Ind. 228, 233-238, 68 N. E. 266. The clerk of the city acts judicially when performing the duty enjoined upon him by §3 of the act. In this, so far as he acts judicially in making his finding and judgment upon which rests his certificate to the legislative body, he acts alone. Such acts, being judicial in their nature, cannot be delegated to a deputy or to a commissioner. The powers of a judicial officer may not be surrendered or delegated to another unless authorized by law. *Waldo* v. *Wallace* (1859), 12 Ind. 569, 572.

It is a judicial function of the courts to pass upon a statute enacted by a Legislature to determine whether the act is a competent expression of the legislative will; and further if the act provides no sufficient means whereby it may be enforced, the act or the section of the act which fails in that particular should be declared judicially invalid and void. A legislative act is stillborn, without life, though it be attended at its inception with all the official function necessary to give it life, unless it contains within it a delegation and grant of power by which it may be carried into effect. And if such is not so given by the legislative will, the act is nugatory, it is merely a dead letter. And it is a judicial function to so declare it, if it is sought in any manner to

affect the citizens by it through illegal means. *State* v. *Gerhardt* (1896), 145 Ind. 439, 452, 44 N. E. 469; *Overseers of Poor, etc.*, v. *Overseers of Poor, etc.* (1878), 87 Pa. 294; *State, ex rel.*, v. *Reusswig* (1910), 110 Minn. 473, 126 N. W. 279. It is held that §3 is unworkable, impossible of performance, and that, therefore, §3 is invalid, void and of no force and effect.

The act in question shows upon its face that it was intended for universal application to each city within the state. It is not applicable to the city of Indianapolis in the case at bar by virtue of the unworkability, impossibility of execution and lack of force and effect of §3 of the act, whereby it is shown that the law is not adapted to universal application to every city within the state. It is not determined now but that the law is applicable to some cities in the state under certain conditions. If the act is inapplicable to one city in the state, the act is not a general law capable of universal application. The judicial determination here is a result of the consideration of the subject-matter of the act and its application; it is not determined by the form of words of the act. It required a concrete case to determine whether this act could be of universal application. This question is for judicial determination. *State* v. *Martin* (1923), 193 Ind. 120, 128, 139 N. E. 282, 26 A. L. R. 1386; *Bullock* v. *Robinson* (1911), 176 Ind. 198, 204, 93 N. E. 998; *Bumb* v. *City of Evansville* (1907), 168 Ind. 272, 275, 80 N. E. 625. The court respectfully submits to the power of the General Assembly, and it determines whether a law can be made universally applicable to the objects of its subject-matter within the state. This determination by the General Assembly is not openly declared in the act itself, but it nevertheless appears from its title, and generally from its face, that the act was intended to be of universal application; and not being so, it is for the court to adjudge whether it may be put to

the full use intended by the act. It is therefore held that §3 of the act violates §23 of Art. 4 of the Constitution, and is therefore void.

Many other propositions are presented by appellants in their brief which question the validity of many other sections of this act. If §3 be cut from the act because it is void, can the rest of the act—the body of it—survive and function? The inception of the new life of the city-manager or commission form of government under the act, is a petition by which to invoke the popular will, to determine whether or no either of the alternative forms of government provided by the act shall be brought into life.

Where only a part of a legislative act violates the Constitution and is judicially declared void, and the remainder of the act is complete in itself and capable of execution according to the legislative intent and wholly independent of that which is judicially determined to be unconstitutional, the remaining part of the act will be sustained.

*State* v. *Barrett* (1909), 172 Ind. 169, 87 N. E. 7. And the reverse is equally the law, that where part of an act has been judicially determined to violate the Constitution, and the remainder of the act is not complete and not possible of performance, the whole act is void and invalid. *Kelso* v. *Cook* (1916), 184 Ind. 173, 181, 110 N. E. 987, Ann. Cas. 1918E 68.

It is, therefore, held that the remainder of the act, after excluding §3, is incomplete and impossible of performance, and is connected with §3 in such a manner that the whole act is invalid and void, and declared to be impossible of performance, and that it is in violation of §23 of Art. 4 of the Constitution.

The act of 1921, approved March 10, 1921, *supra*, being held void as a whole, the action of the Legislature

in 1929 (Acts 1929, ch. 60, p. 157) is without force and such amendment cannot make valid an act which was invalid because it was in violation of the Constitution. It follows, therefore, that the act of the Legislature (Acts 1929, ch. 60, p. 157) which sought to amend the act of 1921 (Acts 1921, ch. 218, p. 594) is invalid and is also unconstitutional.

It is asserted that an election was held June 21, 1927, to determine whether or not the city of Indianapolis should adopt the city-manager form of government, as provided in the act of 1921, *supra*.

Upon that proposition, appellees base their contention that any objections to the validity of the law have been waived for the reason that no objection was made by any citizen to that election. Appellees' contention cannot obtain. The election which was held June 21, 1927, as asserted in the brief, was merely an election for the purpose of determining whether or not the electorate of the city desired to adopt such a form of government. In that expression of the people, no question of the validity of the act of 1921, *supra*, was necessarily involved. That question would naturally arise when steps were taken which involved the expenditure of a large amount of money by the city, as in the case at bar, where it is here alleged to be not less than $75,000 when it was sought to put into action the machinery by which the law would be carried into effect. Such is the case that now confronts the court. The basis or law to sustain the proposed new form of government is here attacked by a taxpayer who has the right to test the validity of the law at any time prior to the functioning of the city under the proposed change of government.

In cause No. 25,788, the trial court committed reversible error in overruling appellees' demurrer to the complaint. In cause No. 25,789, the court committed reversible error in refusing to grant the interlocutory

temporary injunction and in refusing to grant the interlocutory temporary mandatory injunction. In cause No. 25,788, the trial court is ordered to overrule appellees' demurrer to appellant's complaint.

It is further ordered that because of the exigency of the situation on account of the short period of time before the next general municipal election is to be held according to law, this opinion and the mandate thereof are ordered to be certified to the court below immediately upon the filing hereof, notwithstanding time permitted for the filing of petitions for rehearing in the two respective causes of action.

Judgment reversed in case of *Keane* v. *Remy*, No. 25,788.

Judgment reversed in case of *Keane* v. *Holmes*, No. 25,789.

Gemmill, C. J., dissents.

Martin, J., dissents with opinion.

### DISSENTING OPINION.

MARTIN, J.—The contention of the appellants upon which the court has reversed these cases is that it was impossible for the city clerk of the city of Indianapolis to examine the petitions for an election to adopt the city-manager form of government and determine within five days whether they were signed by at least 20 per cent of the voters of such city, that by reason thereof the said election held in 1927 was void and was not effective to put the city-manager form of government into operation in the city of Indianapolis.

It is averred that there were over 95,000 votes cast at the last city election (and we know that 20 per cent of that number would be over 19,000), and "that the court must know that such examination . . . would be impossible, and that because of such impossible require-

ment the court must take judicial notice that any certification made by such clerk would be the result of guess work and imagination rather than a conscientious and discriminating examination of such petition."

The appellants do not allege in their complaints that the petition for the election was not signed by the proper number of qualified voters. They do not allege any facts which show that the performance by the city clerk of Indianapolis of the duty imposed upon him by Acts 1921, ch. 218, §3, §10190 Burns 1926, was impossible, nor do they allege that the clerk did not perform his duty as prescribed by that section. On the contrary, the averments of the complaints that an election was thereafter held by the voters of Indianapolis on the question of whether the city-manager plan of government should be adopted supports the presumption that he did perform his duty either personally or with the aid of deputies.

No one can or does contend that it would be physically possible for one man to examine a petition the size of the one referred to here in five days. The clerk in performing the duty placed upon him by §3 would properly do it by employing a clerical force for such purpose. *State, ex rel.*, v. *Dunn* (1925), 118 Kans. 184, 235 Pac. 132. In performing such duty he acts as a ministerial, administrative officer; he is vested with power to examine the petitions presented and determine their sufficiency and a discretion, subject to review by the courts, to accept and file such as are sufficient and to refuse to accept or file such as are legally insufficient. *State, ex rel.*, v. *Roach* (1910), 230 Mo. 408, 130 S. W. 689, 139 Am. St. 639.

The duties of the city clerk of Indianapolis under §3, were not only possible of performance, but they were performed, and no action in a court to review the correctness of their performance has set such performance aside. (Further we judicially know that such duties have been

performed elsewhere and that the law has for several years been in operation in Michigan City, Indiana.)

The proper time to have questioned in the courts the clerk's determination of the sufficiency of the petition for the election to adopt the city-manager form of government was before that election was held two years ago. The action of the clerk under §3 was merely preliminary to the election held June 21, 1927, at which the city-manager form of government was adopted. The present attack on the validity of that election, brought two years after the election was held, is improper both because it is collateral and because it is brought too late.

Where the officer with whom a petition for a special election is filed has authority to determine its sufficiency and validity, his decision thereon is final, unless such decision has been fraudulent, or corruptly made or procured, or unless he has been guilty of an abuse of discretion. *State, ex rel.*, v. *Graves* (1914), 90 Ohio St. 311, 107 N. E. 1018. Certainly the conclusion of the clerk as to whether the petition was sufficient is final after the election has been held, since it must be assumed that the clerk did his duty. A strong inducing reason to this conclusion is that it is the vote of the electors at the election, and not the signatures to the petition, that determines the effect of the election. *State, ex rel.*, v. *Langlie* (1896), 5 N. D. 594, 67 N. W. 958, 32 L. R. A. 723. (In 9 R. C. L. 997, where this rule is stated as being supported by excellent authority, two cases are noted where the validity of petitions was raised even after the elections were held, but in those cases, unlike the case at bar, there were direct attacks upon the sufficiency of the petitions.)

If we concede, for the purpose of argument only, that the clerk did not properly perform his duty, even then, under the well-settled rules of law, the appellant cannot now attack his action. Before an election the rules and regulations for the conduct thereof may be regarded as

mandatory and their observance may be insisted upon and enforced. After an election, however, they must be regarded in a different light. The problem is to secure a free, untrammeled vote and a correct record and return thereof. To hold all such rules mandatory would be to subordinate the substance to the form, the end to the means. A departure from the statute, which does not deprive legal voters of their right to vote or permit illegal voters to participate in the election, or cast uncertainty on the result, does not affect the validity of the election. Furthermore if a statute simply provides that certain things shall be done within a particular time or in a particular manner and does not declare that their performance shall be essential to the validity of the election, it will be regarded as mandatory only where they affect the merits of the election and as merely directory if they do not affect its merits. 9 R. C. L. 1091, §101; 20 C. J. 181.

In *Sarlls, City Clerk,* v. *State, ex rel.* (1929), *ante* 88, 166 N. E. 270, it was noted that Acts 1921, ch. 218, §3, in requiring the clerk to determine whether the petition was signed by a sufficient number of qualified electors equal to 20 per cent of those who voted at the last city election, imposed a task upon city clerks that might be very difficult to accomplish within the time allowed therefor, especially in a large city and we held that under said §3, the petition was not *prima facie* evidence that the signers were electors, as it is now since the amendment of said section by Acts 1929, ch. 60, §1. It is evident that the Legislature at its 1929 session was of the opinion that §3 (1921) was not a perfect piece of legislation. That section required of city clerks a difficult duty and the result may have been that not every election petitioned for in every city of the state could be held, but merely because of this fact it does not follow that said §3 is invalid or violative of any provision of the Constitution.

Difficulty of enforcement is not a valid argument for unconstitutionality, *Board of Purification of Waters* v. *Town of East Providence* (1926), 47 R. I. 431, 133 Atl. 812, and the fact that a statute is difficult of application and that the administration of a definite rule does not always lead to uniform results has never been regarded as a reason for holding a statute unconstitutional. The statute prescribes the rule of conduct; the administrative officials decide as a matter of fact whether a given case comes within the rule and they may commit error and differ in their conclusions. *People, ex rel.,* v. *Goldfogle* (1926), 242 N. Y. 277, 151 N. E. 452.

The prevailing opinion holds, following its decision regarding §3 (which I believe to be erroneous), that because the clerk of the city of Indianapolis could not personally determine the validity of the petition within five days that the law "is not adapted to universal application to every city within the state" and is therefore in conflict with §23, Art. 4, Constitution, which requires that all laws shall be general and of uniform operation throughout the state. The Constitution does not require that the operation of a law shall be uniform, other than that its operation shall be the same in all parts of the state under the same circumstances. *Bumb* v. *City of Evansville* (1907), 168 Ind. 272, 80 N. E. 625. All cities of the state are free to avail themselves of the provisions of this law and it operates throughout the state in a like manner under the same circumstances and conditions. I believe that the law is applicable to Indianapolis, but universal applicability is not the test of constitutionality. The uniform operation required by the Constitution does not mean universal operation, for a general law may be constitutional and yet operate in fact only upon a limited number of persons or things or within a limited territory. *Northern Pac. R. Co.* v. *Barnes* (1892), 2 N. D. 310, 341, 51 N. W. 386; 36 Cyc 992. A statute should be given

effect as far as possible, and the fact that it may not be possible to give it effect in one class of cases is no reason for not giving it effect in other cases where it is possible. *Hodge* v. *McCall* (1921), 185 Cal. 330, 197 Pac. 86.

In declaring that Acts 1929, ch. 60, is invalid and unconstitutional it would seem that the court has overruled the case of *Walsh, Treas.,* v. *State, ex rel.* (1895), 142 Ind. 357, 41 N. E. 65, 33 L. R. A. 392, where it is said that such an act amending an invalid act (assuming the 1921 act to be invalid) is a valid exercise of power upon the part of the Legislature, which removes the objectionable features of the statute, supplies provisions which makes the law conform to the requirements of the constitution and cures its constitutional invalidity.

Gemmill, C. J., concurs.