MILLER ET AL. *v.* STATE, EX REL. TUTHILL ET AL.

[No. 25,884. Filed May 21, 1930.]

*John G. Yeagley, Louis B. Ewbank, M. J. Kenefick* and *W. W. Pepple,* for appellants.

*Walter C. Williams* and *Neville V. Williams,* for appellees.

MARTIN, J.—The city of Michigan City in 1921 adopted the commission-city-manager form of government (§§10188-10256 Burns 1926), and conducted its affairs thereunder until September 24, 1929, on which date, the law providing for that form of government was declared to be in conflict with the state Constitution and invalid. See *Keane* v. *Remy* (1929), 201 Ind. 286, 168 N. E. 10, 14. Following such decision, a municipal election was held in the city of Michigan City on November 5, 1929, to choose officers to function under the old (federal) form of government. (§10266 *et seq.* Burns 1926.) This action in *quo warranto* was brought by the State on the relation of Harry B. Tuthill and nine others, who received the highest number of votes cast in such city election for mayor and for nine other city offices, against the appellants, who received the lowest number

of votes, but who occupy and hold the said city offices and claim to have been elected on the alleged ground that they were the only legal candidates for such offices at said election, it being their contention that there was an error in the filing of the relators' certificates of nomination which resulted in said relators' names not being properly or legally on the ballots. (Four candidates for other city offices, who are members of the same political party as appellants, received a majority of the votes cast for their respective offices, and the titles to these offices are not involved in this action.)

To the appellees' complaint, appellants filed an answer in two paragraphs, the first a general denial, and the second alleging that relators (appellees) had no legal right to have their names appear upon the official ballot used at said election because the certificate of their nomination was not filed with the city clerk of the city of Michigan City, as required by law, and that relators' names were placed upon said ballot pursuant to an agreement entered into after the Laporte Superior Court had rendered its final judgment in an action for mandate brought by the relators herein and others against the board of election commissioners compelling said board to place relators' names on the official ballot. To the second paragraph of answer, a reply in general denial was filed. After a trial, a special finding of facts was made by the court, conclusions of law were stated thereon, and judgment was rendered in favor of the relators ousting the defendants (appellants) from the several offices.

The alleged errors relied upon are that the court erred in each of its (12) several conclusions of law stated upon its (38) special findings of facts, and in overruling appellants' motion for a new trial wherein it was alleged that the decision of the court is not sustained by sufficient evidence and is contrary to law. It is also alleged

that the court had no jurisdiction of the person of one Sorge, mentioned in the 11th conclusion of law and in the judgment.

The evidence consists of 38 paragraphs of stipulations of agreed facts which, with the exception of one paragraph, were adopted by the court as a special finding of facts. It appears therefrom that those who were officers under the city-manager plan at the time the case of *Keane* v. *Remy, supra,* was decided, thereafter sought the advice and opinion of the Attorney-General as to their rights in conducting the offices of said city until other officers were duly elected and qualified. The Attorney-General orally advised such officers that they were then *de facto* officers and entitled to call an election and to hold and occupy their offices until their successors were duly elected and qualified. The Attorney-General, at the request of the Governor, also rendered an exhaustive opinion on October 2, 1929 as to the status of the government of the city of Michigan City, in view of the decision of the case of *Keane* v. *Remy, supra.* Opinions Attorney-General of Indiana (1929-1930) p. 196.

The Republican city committee of Michigan City on October 1, 1929, held a convention which had been duly called, and nominated 13 persons (10 of whom are the relators herein), for the several official positions to be elected at the general (city) election to be held in November, 1929, and, on October 3, 1929 (which was more than 15 days and less than 60 days before the election), filed a certificate of such nominations, signed by the chairman and secretary of such committee (§7475 Burns 1926),[1] in the office room in the courthouse in which the office of the city clerk (clerk *ex officio* of the board of election

---

[1] Political party nominees for city offices are ordinarily chosen by primary elections held in May under §7390 *et seq.* Burns 1926, but, as the necessity for such election here did not appear until September 24, the tickets were filled under the provisions of §7475 Burns 1926.

commissioners), was located, (and in which room such office had been located for 30 years and is still located). At such time, Edward J. Heise, who, for five years, had been city clerk under the city-manager plan, and Eleanor Hirschmann, deputy city clerk, were occupying said office room, and said certificate of nomination was presented, filed, and the seal of the city was attached thereto, and it was then placed and kept in said room among all the other papers, files and records pertaining to the city of Michigan City and belonging to the clerk's office (then in the possession and under the control of said Heise).

On October 5, 1929, the secretary of the Democratic city committee filed with Heise the nomination of one Sherwood, as an election commissioner, and, on October 10, 1929, Charles J. Luchtman, as Democratic city chairman, filed with Heise, as city clerk, the withdrawal of a candidate for councilman-at-large and certified to the nomination of another. Also, on October 10, 1929, a second certificate, signed by the chairman and secretary of the Republican city committee, was filed with said Heise or Hirschmann, setting forth the withdrawal of certain candidates and the nomination of others to take their places.

On September 27, 1929, Fred C. Miller (who now claims the office of mayor and is one of the appellants), who was elected mayor under the old form of government in 1917, and was mayor when the manager form of government was adopted, gave notice to the city-manager officials that he regarded himself as hold-over mayor, and, on October 11, 1929, he published in the newspapers a proclamation declaring that all officers under the old form of government who last functioned (in 1921) were the lawful hold-over officers of said city. Alexander Spychalski, the last city clerk under the old form of government, had been appointed as a deputy

clerk of the Laporte Circuit Court May 28, 1928, and was holding such office on September 24, 1929, and said Miller, on October 10, 1929, appointed Charles J. Luchtman (the same person named above) as city clerk, which appointment was approved by the persons who were elected as members of the common council in 1917 (§10276 Burns 1926). On October 11, 1929, said Miller, as such mayor, made written demand on the city-manager-plan officers, including Heise, the city clerk, that they cease attempting to govern the city under said void act, and surrender and deliver over the properties, rooms, books, records and moneys belonging to the city. This demand was not complied with. Thereupon, a suit was brought in the Laporte Superior Court, and a temporary injunction enjoining said city-manager officers from interfering with Luchtman and the hold-over officers "was orally granted and announced by the judge of said court in open court at about five o'clock p. m. on October 21, 1929, and was effective thereafter and was signed and filed on October 22, 1929." October 21 was the last day upon which certificates of nomination could, under the law, be filed. The certificate of nomination of the Democratic candidates was filed on October 19, 1929, with Luchtman, who "worked at the factory of S. Karpen & Bros. in said city" and was "ready and willing to receive for filing . . . any certificates of nomination" after Miller appointed him clerk. He received such certificate and had legal custody of the same as city clerk (after the order referred to above was made).

After October 22, 1929, Luchtman, as city clerk, appointed one Lahey, a Democrat, and one Loomis, a Republican, as election commissioners, and the three, as election commissioners, proceeded to hold the city election. Such board of election commissioners (i. e., Luchtman and Lahey as a majority of the board) let it be known that they did not intend to print any of the

relators' names upon the official ballots at said election to be held on November 5, 1929. Thereupon, on October 7, 1929, a mandamus action was commenced in the Laporte Superior Court, in the name of the State on relation, among others, of the persons who are relators in this action, against the members of the city board of election commissioners to compel them to print their names on the official ballots. That court, upon a trial, found for the relators, and, on November 1, 1929, ordered said election commissioners to print said names, as Republican candidates, upon the ballots. An appeal was taken to the Supreme Court, but, a quorum of the court not being present on the day the transcript was filed (Saturday, November 2, 1929), the attorneys for the parties agreed not to attempt to secure a decision before election day, which was the following Tuesday, but agreed that the names of the Republican candidates as well as the Democratic candidates should be printed on the ballots and voted on, the result of the election to be subject to the decision of the court on the question presented by the appeal. Upon oral argument of the cause December 17, 1929, a majority of this court (not including the writer of this opinion) concluded that such appeal involved a question that was moot, and dismissed the same without prejudice on December 18, 1929. The present action to determine the title to the 10 offices involved resulted.

It is unnecessary here to determine whether the Attorney-General was correct in his opinion or whether the Laporte Superior Court was correct in its decision enjoining the city-manager officers from interfering with those who sought to hold the offices as "hold-overs" from the form of government that existed eight years previously. It is clear from the facts stated above, which appear in the special findings of fact in the instant case, that (regardless of which of the

above views of the law is correct), the certificate of nomination containing the relators' names was filed with Edward J. Heise in the regular office set apart for the city clerk in the courthouse at Michigan City, was filed at a date which was proper under the statute, and that, on said date, October 3, 1929, Edward J. Heise was performing the duties of city clerk as a *de facto* officer. *State, ex rel.*, v. *Board, etc.* (1925), 196 Ind. 472, 149 N. E. 69; *Landes* v. *Walls* (1903), 160 Ind. 216, 66 N. E. 679; *State, ex rel.*, v. *Crowe* (1898), 150 Ind. 455, 50 N. E. 471; *Parker* v. *State, ex rel.* (1892), 133 Ind. 178, 32 N. E. 836, 33 N. E. 119, 18 L. R. A. 567; *Mowbray, Exr.*, v. *State* (1882), 88 Ind. 324; *Blackman* v. *State* (1859), 12 Ind. 556; 2 McQuillen, Mun. Corp. (2d ed.) 155, 159, 161; 46 C. J. 1057. It follows that the certificate of nomination of relators was properly filed, and that the trial court herein was correct in its conclusions of law No. 1 and Nos. 3 to 12, inclusive, viz., that the law is with the relators, and that the several relators (appellees) were, on November 5, 1929, duly elected to, and are entitled to, the several offices claimed by them for a term of four years from January 6, 1930, at noon, and that the several defendants (appellants) are ousted from such offices.

The court's conclusion of law No. 2 was to the effect that the final judgment of the Laporte Superior Court rendered on November 1, 1929, ordering said board to place the names of the relators herein, and others, upon the official ballot, is binding upon the parties and the trial court herein, which is without power to inquire into and adjudicate such question. This conclusion was doubtless based, in part, upon paragraph 38 of the court's special finding of facts, which was, in substance, that the defendants (appellants), by their attorney, for their own benefit, participated in the defense of the action for mandate commenced in the Laporte Superior

Court in the name of the State of Indiana on relation, among others, of the persons who are relators herein, and in the appeal from the judgment of said Laporte Superior Court to the Supreme Court.

It is apparent that at the trial an effort was made to force the trial court to decide the controversy between the parties on grounds other than *res adjudicata*. Paragraph 37 of the agreed statement of facts, which was not adopted by the court in its special finding of facts, provided that:

"The defendants have the right in this action, on the facts herein stipulated, to question the legality of the presence of the names of the relators on said ballots as candidates for said offices and the legality of all ballots cast for any of the relators as such candidates at said election."

This, instead of being a statement of fact is a conclusion of law, and the court did not err in failing to adopt it as a part of the special finding of facts. The appellants admit that "conclusions of law have no place in special findings," but contend that "the fact that such a stipulation of rights was made and admitted in evidence does have a place in the finding of facts." They quote from *Ex parte Walls* (1880), 73 Ind. 95, as follows:

"If pertinent and material facts are proven, but the court does not find upon them, and thereby impliedly finds that they are not proven, the finding in such respect is clearly contrary to law."

The facts thus referred to are facts pertinent and material to the issues being tried, and not the mere fact that the parties had agreed between themselves that, as a matter of law, they believed one of them had the right to have a certain legal question decided.

Paragraph 38 of the court's special finding of facts was not a part of the agreed stipulation of facts. The trial

court in a written opinion (which appellants print as an appendix to their brief) says that the inference of paragraph 38 is unavoidable from the facts contained in stipulations 23 to 36, inclusive, that the agreed statement of facts does not show whether the present defendants were parties to the record in the action for mandate in the Laporte Superior Court, and that it was not necessary that they be parties to the record in order to be bound. An interesting question is thus presented and discussed at length by counsel in their briefs, but we believe a discussion and decision of it here would be profitless. A decision that the court did not err in its conclusion of law No. 2 would result in affirming the case, while a decision that the court erred in its conclusion of law No. 2 would not result in a reversal of the case, since the court, in stating its other conclusions of law upon the full statement of facts agreed upon by the parties, correctly settled the question of law involved and rendered a proper judgment.

The court's conclusion of law No. 11 was that the office of councilman of the fifth ward belonged to relator William C. Haviland, and not to the "defendant" George Sorge, and, as a part of the judgment, it is adjudged that "the defendant George Sorge be ousted," etc. It appears from the record that Sorge is not a party to this appeal, that he was not a party to the action below, and that the court did not have jurisdiction of his person.

The judgment is affirmed, except the portion thereof which adjudges that George Sorge be ousted from the office of councilman from the fifth ward of the city of Michigan City.

Willoughby, J., absent.