Bullock *v.* Robison—176 Ind. 198.

---

## BULLOCK *v.* ROBISON, TREASURER, ET AL.

[No. 21,637.   Filed February 14, 1911.   Rehearing denied June 23, 1911.]

1. STATUTES.—*Local.*—*Population.*—An act applying to all cities of a certain population "according to the last United States census," is not necessarily local; but one applying to all cities having a certain population according to a particular census is local.  p. 202.

2. CONSTITUTIONAL LAW.—*Cities.*—*Classification.*—The legislature has the constitutional right to classify cities; but such classification must not be arbitrary and must be based upon subject-matter and not upon form merely.  p. 203.

3. SCHOOLS.— *Support.*— *Art Institutes.*— *Statutes.*— *Classification of Cities.*—*Constitutional Law.*—Section four of the act of 1909 (Acts 1909 p. 89), providing "that [in] any school city * * * where there is, or hereafter shall be, an art association which owns buildings, grounds, works of art and other equipment * * * in which more than $200,000 shall have been invested, and which association shall cause to be made and continued as members of its governing board of directors, trustees or other managing body, the superintendent of schools of said school city, its director of art instructions, if any there be, and two other persons to be nominated by the board of school commissioners, and which association shall give free admission * * * to all teachers and pupils of the public, private and parochial schools in said city * * * and which shall at half the rates established in other cities for similar service provide instruction * * * for all teachers * * * nominated by the superintendent of schools of said city," the board of school commissioners shall pay to such art association "one-half cent on each $100 of the taxables of said city as valued on the tax duplicate made in the year 1908," is unconstitutional.  p. 205.

4. PRINCIPAL AND AGENT.—*Agent of Different Masters.*—*Schools.*— *Art Institutes.*—The fact that an art association which under the questioned act receives support from the school city, has as members of its governing board representatives of the school city, does not prevent the interests of such association and of such school city from becoming adverse, thereby requiring such representatives to choose which interests they will represent.  p. 207.

From Marion Circuit Court (17,892); *Charles Remster,* Judge.

Suit by Henry W. Bullock against Edward J. Robison, as Treasurer of Marion county, and others. From a judgment for defendants, plaintiff appeals. *Reversed.*

*Henry W. Bullock, in pro. per.,* for appellant.

*Albert Baker* and *Smith, Duncan, Hornbrook & Smith,* for appellees.

Morris, J.—Appellant filed his complaint in the Marion Circuit Court against Edward J. Robison, county treasurer, the board of school commissioners, the city controller of Indianapolis, and the art association of the same city.

The complaint alleges that the treasurer has in his hands the sum of $10,000, belonging to the school fund of the school city of Indianapolis, that was collected from the taxpayers of the school city by virtue of a levy and an assessment made by the proper officers, pursuant to the provisions of §4 of an act of the General Assembly, approved March 1, 1909 (Acts 1909 p. 89); that unless enjoined, the school commissioners will authorize the city controller to draw a warrant for $10,000, payable to defendant art association out of said school funds, and the treasurer will pay it; that defendant art association is a private corporation, conducting, for gain, the John Herron Art Institute in the city of Indianapolis, and has a board of twenty-five directors, four of whom are chosen by the school authorities, and the remaining twenty-one are chosen by the stockholders of the association; that the association is not managed by any public authority, but is controlled entirely by its board of directors.

The complaint further alleges that said §4 is void, because it is in conflict with the Constitution of Indiana, and, in the capacity of a resident taxpayer, appellant brings suit, and prays that the threatened payment of the $10,000 be perpetually enjoined.

To this complaint the defendants each filed separate de-

murrers for want of facts. The court sustained each demurrer, and upon plaintiff's declining to plead further, a judgment was rendered against him, from which he brings this appeal. The errors assigned by appellant consist of the action of the circuit court in sustaining each of the demurrers of appellees.

Said §4 reads as follows: "That [in] any school city in this State, such as is designated in §1 of this act, where there is, or hereafter shall be, an *art association which owns buildings, grounds, works of art* and *other equipment,* for the study of art, *located in said city,* and in which *more than $200,000 shall have been invested,* and which association shall cause to be made and continued as *members* of its *governing board of directors,* trustees or other managing body, the *superintendent* of *schools* of said school city, its *director* of *art instructions,* if any there be, and *two other persons to be nominated by the board of school commissioners,* and which association shall give free admission, at reasonable times, to its museum and art galleries to all teachers and pupils of the *public, private* and *parochial schools in said city,* and which shall provide free illustrated lectures, on some art or kindred subject, throughout the public school year of said city not less frequently than one lecture a week for school children, the same to be given at its *museum* or in a *public school;* and which shall at *half the rates established in other cities for similar service* provide instruction in the teaching of drawing and design for all *teachers* in said city *nominated* by the *superintendent of schools* of said city, and which shall provide throughout such school year free for not fewer than fifty pupils to be nominated on competitive examination by said superintendent of schools advanced instruction in drawing and in such applied arts as it teaches, it shall be the duty of said board of school commissioners so long as such art association continues to do and *perform all said things,* or is *able* and *ready and willing to do and perform them,* to avail itself thereof for the benefit

of the school children and teachers in said city, and to pay such art association annually in quarterly instalments from the special fund of said school city a sum equal to one-half cent on each $100 of the taxables of said city as valued on the tax duplicates for the year next before the date of each such payment; and said board of school commissioners *may coöperate* with such association in further improving or enlarging the *instruction* in *drawing* and in *manual* and *industrial training* in the public schools and, to those ends, may accept contributions of money or services or equipment from such association on such conditions as in *the judgment* of said board of school commissioners may benefit the public schools, *provided that such coöperation* and the acceptance of such contributions do not involve a *total expenditure* by said board from its own funds exceeding, in any one year, a sum equal to *one-half cent on each $100 of the taxables of said city as valued on the tax duplicate made in the year 1908;* but the right is hereby reserved to the State to repeal, alter or amend, at the pleasure of the legislature, this section and all the rights and powers it gives." (Our italics.)

The title of the act reads as follows: "An act concerning common school corporations in cities of more than one hundred thousand inhabitants." Section one of the act relates to acts of boards of school commissioners "in all cities of this State of more than one hundred thousand inhabitants according to the last United States census."

Appellant contends that §4, *supra,* is unconstitutional and void for the following reasons: (1) Money raised by taxation cannot be used to assist private persons or corporations, or for other than public purposes; (2) no aid can be given parochial schools out of the public treasury; (3) the act deprives school cities of local self-government; (4) it conflicts with article 4, §22, clause 13, of our state Constitution, which prohibits local or special laws concerning the preservation of the school funds; (5) it conflicts with the same clause which prohibits local and special laws providing for

supporting common schools. Appellant contends that the enactment is invalid for some other reasons which we do not deem necessary to consider.

Appellees concede that public moneys cannot be appropriated to private uses, but contend that that question is not involved in the consideration of the act; that the General Assembly may provide for the payment of public moneys to private agencies engaged in work for public benefit; that the act in controversy does not seek to affect the common school fund; that the section of the act complained of does not confer aid on any parochial school, in conflict with the section of our Constitution that prohibits the drawing from the public treasury of any money for the benefit of any religious institution (§6 Bill of Rights) ; that even if it should be conceded that the act had such effect, it would be the duty of the court to eliminate from the enactment the words "private and parochial," and let the legislation stand; that the act does not interfere with the rights of cities in the matter of local self-government, because the school system of Indiana is a state system and under its control, and it may directly command its local agencies to levy taxes for particular purposes; that the act is not local nor special in reference to providing for the support of common schools, but provides for its application by a just and lawful classification.

It is evident that appellees are correct in regard to appellant's fourth contention, because the legislation in question does not seek to affect the common school fund. Assuming, without deciding, that appellees are correct on all the propositions involved except the last one, that assails the validity of the section in controversy, because such act relates to provisions for the support of common schools, and is local and special in character, we shall consider this contention.

In the case of *Campbell* v. *City of Indianapolis* (1900), 155 Ind. 186, it was held that an act relating to the issuance of bonds by school corporations in cities having a population of 100,000, "according to the last United

States census," did not conflict with the provision of the Constitution before cited, because, while the act did not, when adopted, apply to any other city than Indianapolis, it would, in the future, apply to all cities of the state that should thereafter attain the requisite population. But in the same case, it was held that an act in relation to the same subject-matter, applying to cities of a certain population, as shown by the census of 1870, was invalid, because it was special and local. It would appear, therefore, that if the application of the act in question had been made to depend alone on population, it would not be invalid under the doctrine announced in that case.

But it will be noticed that there are many other restrictions besides population that limit the application of the statute to a corporation having the requisite population, and it is, therefore, proper to consider the general principles governing the proper classification of corporations of this character.

The provisions of article 4, §22, of our Constitution, prohibiting local and special laws in the cases therein enumerated, did not appear in our Constitution of 1816. But the many evils that sprang from the enactment of local and special laws, caused in part by a lack of interest on the part of legislators in measures that did not affect the districts represented by them, induced the Constitutional Convention of 1851 to eradicate the source of these evils, by restricting the power of the legislature to enact local or special laws, relating to certain matters, among which was the providing for the support of common schools. Similar limitations on legislative power have been engrafted on the constitutions of other states.

The intention of the people in adopting these restrictions is too plain for misapprehension. *Wanser* v. *Hoos* (1897), 60 N. J. L. 482, 38 Atl. 449, 64 Am. St. 600 and note.

2.   The General Assembly is as much bound by the limitations fixed by the Constitution, as individuals.

*Board, etc.,* v. *State, ex rel.* (1904), 161 Ind. 616. The General Assembly may, however, without conflicting with the constitutional limitation, classify the cities to which an enactment applies. *City of Indianapolis* v. *Navin* (1898), 151 Ind. 139, 41 L. R. A. 337; *Evansville, etc., R. Co.* v. *City of Terre Haute* (1903), 161 Ind. 26; *Campbell* v. *City of Indianapolis, supra.* But a valid classification must not conflict with well-recognized rules, some of which are as follows: The classification must embrace a class of subjects or places, and not omit any one naturally belonging to the class. It must be based on some reasonable ground, that bears a just and proper relation to it, and not be a mere arbitrary selection. More is required than a mere designation by such characteristics as will serve to classify; the characteristics serving as a basis must be of such substantial nature as to mark the objects so designated as particularly requiring exclusive legislation. There must be a substantial distinction, having reference to the subject-matter of the proposed legislation, between the objects or places embraced in the enactment, and the objects or places excluded. Whether a law is general or special depends on its subject-matter, and not on its form. *Town of Longview* v. *City of Crawfordsville* (1905), 164 Ind. 117, 68 L. R. A. 622; *Bedford Quarries Co.* v. *Bough* (1907), 168 Ind. 671; *Board, etc.,* v. *Johnson* (1909), 173 Ind. 76; *Bumb* v. *City of Evansville* (1907), 168 Ind. 272; *School City of Rushville* v. *Hayes* (1904), 162 Ind. 193; *Board, etc.,* v. *State, ex rel.* (1904), 161 Ind. 616; *Nichols* v. *Walter* (1887), 37 Minn. 264, 33 N. W. 800; *Hetland* v. *Board, etc.* (1903), 89 Minn. 492, 95 N. W. 305; *State, ex rel.,* v. *Ellet* (1890), 47 Ohio St. 90, 23 N. E. 931, 21 Am. St. 772 and notes; *Wanser* v. *Hoos, supra; State, ex rel.,* v. *Hammer* (1880), 42 N. J. L. 435; *State, ex rel.,* v. *Jones* (1902), 66 Ohio St. 453, 64 N. E. 424, 90 Am. St. 592; *People, ex rel.,* v. *Martin* (1899), 178 Ill. 611, 53 N. E. 309.

Tested by the foregoing requirements, Does this legislation fall within the prohibited class? It will be noted that before

§4 of the act of 1909, *supra,* can apply to any city, it
3.  must not only have a population of 100,000, but it
    must have the following further characteristics: (1)
It must have within its limits an art association which owns
buildings, grounds, etc., of the value of $200,000; (2) the
association must have as members of its managing body the
superintendent of schools, the director of art instruction, if
any, and two persons nominated by the school board; (3) it
must give free admission to its museum, etc., to all teachers
and pupils of the public, private and parochial schools; (4)
it must, at half the rates established in other cities for simi-
lar service, provide instruction, etc., for teachers nominated
by the school superintendent, and for fifty pupils nominated
by the superintendent on competitive examination. Under
said conditions, it is mandatory on the part of the school
commissioners to pay such art associations from the special
fund of said school city annually a sum equal to one-half
cent on each $100 of the taxables of the city.

It is next provided that the school commissioners may
coöperate with such association in further improving or en-
larging the instruction, etc., provided the coöperation does
not involve a total expenditure from the school fund, ex-
ceeding in one year a sum equal to a half cent on the $100
of taxables, as valued on the tax duplicates made in the
year 1908.

It is altogether possible that there may, in the future, be
cities in Indiana, having a population of 100,000, that had
no existence in 1908, and as to such cities the act, as an
entirety, could never apply, because of the lack of taxables
for the year 1908. It is very probable that in the future
there will be cities attaining to the class mentioned, whose
taxables, as shown by the tax duplicate of 1908, are small in
comparison with those of Indianapolis in 1908, and yet the
needs of such supposed city for further improvement in in-
struction in drawing and in manual and industrial training
might be greater than those of Indianapolis. Consequently

the legislation cannot operate equally upon all within the class, and the reason for the partial or total exclusion of some cities from the class does not inhere in the subject-matter.

The evident object of the enactment is instruction in art and kindred subjects, said instruction to be furnished by a private association, which may be a corporation organized for gain, as is said defendant art association. That any school city should be prohibited from employing an instructor unless such instructor shall also furnish free instruction, by means of free admission to its museum and art galleries to all teachers and pupils of private and parochial schools, implies a classification that is merely arbitrary and without reasonable basis. In *School City of Rushville* v. *Hayes, supra,* this court quotes with approval from *State, ex rel.,* v. *Hammer* (1880), 42 N. J. L. 435, as follows: "There must be substantial distinction, having a reference to the subject-matter of the proposed legislation, between the objects or places embraced in such legislation and the objects or places excluded. The marks of distinction on which the classification is founded must be such, in the nature of things, as will, in some reasonable degree, at least, account for or justify the restriction of the legislation." It cannot be said that the restriction under consideration is justified by any substantial distinction that has reference to the subject-matter of the legislation.

Another restrictive feature of this act provides that the association employed as instructor must have, as members of its governing board of directors or managers, the school superintendent, director of art instructions, if any, and two persons nominated by the school commissioners. The school commissioners, by the terms of the act, are given the discretionary power to coöperate with the art association (managed by a board consisting, in part at least, of four appointees of the board of school commissioners), in the further improvement, etc., of instruction in drawing, etc., and, to accomplish

this purpose, may expend from the school funds a sum equal to one-half cent on the $100 of the taxables of the city, as shown by the duplicates of 1908.

It may be that the General Assembly considered that if the private corporation had as members of its managing board, officers and appointees of the school city, the school interests would thereby be better protected. It should not be forgotten, however, that directors of a private corporation owe a very high duty to its stockholders, and that the interests of the school corporation and those of the art association may be adverse. It is unnecessary to say that no man can render faithful service to two masters in a matter where their interests conflict. Section twenty-one of an act entitled "An act concerning common schools in cities having a population of more than one hundred thousand, providing penalties for the violation of the provisions thereof, and declaring an emergency," approved March 4, 1899 (Acts 1899 p. 434, §6535 Burns 1908), in part provides: "It shall be unlawful for any commissioner or officer chosen by the board of school commissioners in any manner, directly or indirectly, to profit by or be interested in any contract of said board, and any person convicted of a violation of this section shall be fined in any sum not less than $100 nor more than $1,000 and expelled from office."

Similar statutes have been enacted with reference to officers of cities. §§2423, 5930 Burns 1908, Acts 1905 p. 584, §517, Acts 1899 p. 343, §13. Aside from statutory enactments, at common law, a public officer was not permitted to exercise discretionary power in a matter in which he was personally interested. 29 Cyc. 1435. It would scarcely be contended that a restriction is grounded on a reasonable basis, when it might require a violation of the law.

Without extending this opinion further, it is sufficient to say that §4 of the act of March 1, 1909 (Acts 1909 p. 89), is void because in conflict with article 4, §22, of the Constitution of Indiana, prohibiting local and special legislation

providing for the support of common schools. The judgment of the circuit court is reversed, with instructions to overrule appellees' demurrers.