The **INDIANA STATE PRISON AND STATE EMPLOYEES' APPEALS COMMISSION,** Appellant (Respondent Below),

v.

**William VAN ULZEN,** Appellee (Petitioner Below).

No. 73A04–9003–CV–116[1].

Court of Appeals of Indiana, First District.

March 12, 1991.

---

**1.** This case was reassigned to this office on January 2, 1991.

Linley E. Pearson, Atty. Gen., Michael A. Schoening, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellant.

Jonathan L. Birge, Mary Beth Claus, Bingham Summers Welsh & Spilman, Indianapolis, for appellee.

ROBERTSON, Judge.

The Indiana State Prison, and the State Employees' Appeals Commission [collectively, the State] appeal the trial court's reversal of the Commission's determination that Van Ulzen's claim that the Prison's policy of reassigning institutional teachers to the duties of correctional officers during periods of prison lock-downs was unlawful. The State also appeals the trial court's order that the Prison discontinue this policy. The State raises three issues, none of which constitutes reversible error.

## FACTS

William Van Ulzen is employed as an institutional drafting teacher at the Indiana State Prison in Michigan City, Indiana. At various times in the past, the administration of the prison has initiated institution-wide lockdowns. During a lockdown, the majority of the prisoners are confined to their cells and their movements are severely restricted. No classes are held. During a lockdown in March of 1987, teachers at the prison, including Van Ulzen, were assigned to other duties throughout the prison in order to perform work normally required of correctional officers. For example, during the March 1987 lockdown, Van Ulzen answered phones and took messages for prison personnel and escorted inmates to the visiting area.

The parties agree that Van Ulzen is a State Merit Employee. The State does not dispute that the Van Ulzen's position as an institutional instructor is in a higher job classification than the position of correctional officer.

Van Ulzen filed a series of grievances objecting to this practice.[2] He received a hearing before the State Employees' Appeals Commission. After Van Ulzen's presentation of evidence, the Prison moved for summary judgment which was taken under advisement. The hearing officer entered recommended findings of fact, conclusions of law, and a recommendation of action— that summary judgment be entered in favor of the Prison. The Commission accepted the hearing officer's recommendation and entered summary judgment against Van Ulzen.

Van Ulzen petitioned the Shelby County Circuit Court for judicial review. After entertaining argument on Van Ulzen's petition, the trial court entered Findings of Fact, Conclusions of Law, and Judgment in favor of Van Ulzen declaring the reassignment policy unlawful and ordering the State to discontinue this policy. The State brings this appeal.

## DECISION

■ This case is governed by the Indiana Administrative Adjudication Act, now IND. CODE 4–21.5–3–1 et seq. *State v. Van Ulzen*, (1983), Ind.App., 456 N.E.2d 459. The function of the trial court on the judicial review of administrative determinations is limited to a determination of whether the agency possessed jurisdiction over the matter and whether the order was made in accordance with the proper legal procedure, was based upon substantial evidence, and did not violate any constitutional, statutory, or legal principle. *Clarkson v. Indiana Department of Insurance* (1981), Ind.App., 425 N.E.2d 203. The scope of judicial review of administrative determinations is limited to the consideration of whether there was substantial evidence to support the finding or order of the administrative body and whether or not the

---

2. Van Ulzen has been pursuing his attack of the Prison's reassignment policy for approximately ten (10) years. *State v. Van Ulzen* (1983), Ind. App., 456 N.E.2d 459. In *Van Ulzen*, we held

that the trial court failed to acquire jurisdiction in Van Ulzen's earlier assault upon the Prison's substitution policy because he failed to comply with the appropriate administrative procedures.

action constitutes an abuse of discretion or is arbitrary and capricious as revealed by uncontradicted facts. *City of Indianapolis v. Ingram* (1978), 176 Ind.App. 645, 377 N.E.2d 877. The burden of proving an administrative action was an abuse of discretion or arbitrary and capricious falls upon the party attempting to upset the administrative order. *Clarkson*, 425 N.E.2d 203. The Court of Appeals will not substitute its opinion for that of an agency concerning matters within the scope of that agency's discretion and authority. *Id.*

■ Courts that review administrative determinations, at both the trial and appellate level, are prohibited from reweighing the evidence or judging the credibility of witnesses and must accept the facts as found by the administrative body. *Public Service Co. of Indiana, Inc. v. Review Bd. of Employment Security Division* (1983), Ind.App., 451 N.E.2d 371. However, we need not accord the same degree of deference to an agency's conclusion on a question of law. *Id.* Law is the province of the judiciary. *Bd. of Trustees of Public Employees' Retirement Fund of Indiana v. Miller* (1988), Ind., 519 N.E.2d 732. Our constitutional system empowers the courts to draw legal conclusions and accordingly the court in its function of judicial review of an administrative action may set aside an agency determination that is not in accordance with law. *Id.*

■ An interpretation given a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight; however, an agency's interpretation of a statute which is incorrect is entitled to no weight. *Bd. of Trustees of Public Employees' Retirement Fund of Indiana v. Baughman* (1983), Ind.App., 450 N.E.2d 95. While evidence before an administrative agency will not be reweighed by the reviewing court, where the agency's finding is contrary to law, it shall be reversed. *Id.* If an agency misconstrues a statute, there is no reasonable basis for the agency's ultimate action and the trial court is required to reverse the agency's action as being arbitrary and capricious. *Id.*

## I.

*Whether the Commission's decision was arbitrary and capricious?*

■ The trial court found that the Commission misconstrued the applicable statutory law governing the reassignment of State employees to job positions in lower classifications. Accordingly, the trial court reversed the Commission's determination against Van Ulzen as being contrary to law or arbitrary and capricious.

All appointments, promotions, demotions, transfers, layoffs, removals, and discipline of State employees are governed by statute. IND.CODE 4–15–2–4. The State's ability to transfer employees from one position to another is governed by IND.CODE 4–15–2–24 which provides:

> An appointing authority may at any time assign an employee from one position to another position *in the same class or rank* in his division of the service.

> \* \* \* \* \* \*

> *Any change of a regular employee from a position in one class to a position in a class of a lower rank shall be considered a demotion and shall be made only in accordance with the procedure prescribed by [statute] for cases of dismissal.* (emphasis added)

An administrative regulation, 31 IAC 2–7–7, is consistent with the above statute. It reads:

> Transfer. (A) An appointing authority may at any time assign an employee from one position to another position *in the same class* under his jurisdiction. (emphasis added)

In denying Van Ulzen relief on his grievances, the State has consistently relied on 31 IAC 2–4–2(f) which reads:

> Any salary paid to an employee shall represent the total remuneration for the employee, not including reimbursements for official travel.

> Charges for subsistence or maintenance received shall be deducted from the total salary.

Employees whose substitution on unrelated positions does not involve working more than the normal number of hours shall not be paid additional compensation for the additional duties. No such substitution shall exceed twelve (12) consecutive calendar weeks.

The State has consistently maintained that the above regulation gives it *authority* to substitute a State employee from one position to another on a temporary basis—including the reassignment of an employee to the duties of a position in a lower job classification—as long as the reassignment does not exceed twelve (12) weeks in duration. The Commission's hearing officer arrived at this interpretation by finding that the terms "classification" and "position" were interchangeable.

We do not believe the statutory/regulatory scheme involving the terms "classification" and "position" to be ambiguous or particularly complex. In fact, the Prison is obviously cognizant of the distinction between the two terms as it openly admits that Van Ulzen's position as an institutional instructor is in a higher classification than the position of a correctional officer.

The statutory/regulatory scheme governing State employment clearly does not use the terms "classification" and "position" interchangeably. The concept of classification is defined by statute effective at the time this case was decided as follows:

'Class' or 'class or positions' is defined as 'a group of positions in the state classified service sufficiently alike in duties, authority and responsibility that the same qualifications may reasonably be required for, and the same schedule of pay can be equitably applied to, all positions in the group.'

IND.CODE 4–15–2–3 [3]. "Class" is also defined by 31 IAC 2–1–1(h) as follows:

'Class' means one (1) or more positions sufficiently alike in duties and responsibilities to warrant the same descriptive title, pay range and minimum qualifications.

"Position" is defined by 31 IAC 2–1–1(f) as follows:

'Position' means a group of current duties and responsibilities, assigned or delegated by competent authority, and approved by the state personnel division, requiring the full-time or part-time employment of one (1) person.

We believe it to be obvious that the State's interpretation of 31 IAC 2–4–3(f) is in direct conflict with I.C. 4–15–2–24 and 31 IAC 2–7–7 as set out above which clearly prohibit the State from reassigning State employees to positions in lower classifications without complying with the prescribed procedures. We need not burden this opinion with complex and painful statutory construction to conclude that the State has simply misconstrued 31 IAC 2–4–3(f). We believe it is axiomatic that no administrative regulation can convey upon the State greater power than sanctioned by statute. Therefore, the State's interpretation of the administrative regulation 31 IAC 2–4–3(f) which affords the State greater authority than is permitted by the statute I.C. 4–15–2–24 must be erroneous.

Moreover, we note—as the trial court found—that 31 IAC 2–4–3(f) does not purport to grant the State the *authority* to reassign, transfer, or substitute employees. It simply provides that employees who are substituted from one position to another—presumably in a lawful manner—are not entitled to additional compensation for the additional duties of the substituted position. It also limits such substitutions to periods not to exceed twelve (12) weeks in duration.

We hold the trial court was correct in concluding that the State has misconstrued the statutory/regulatory scheme governing the authority of the State to substitute employees from one class to the duties of a position in another class. Statutory law, I.C. 4–15–2–24, is clear that "[a]ny change" of an employee from a position in one class to a position in a lower class requires compliance with prescribed procedures. We must conclude that "[a]ny change" encom-

---

**3.** The above definition was amended by P.L. 1–1990, SEC. 15 and is now found at IND.CODE 4–15–2–2.3. However, we do not perceive any substantive change in the definition.

passes a temporary substitution such as the one complained of in the case at bar. While we wish that the law were more flexible with respect to the ability of the State to manage its employees, we can come to no other conclusion than that reached by the trial court—that the Prison's policy of temporarily assigning institutional teachers to the duties of correctional officers during lockdowns constitutes an unlawful transfer. Such a reassignment to a position in a lower class constitutes a demotion and requires compliance with all the procedures prescribed for dismissing a Merit State employee. I.C. 4–15–2–24.

As the Commission's determination was based on an erroneous interpretation of law, it lacks a reasonable basis and the trial court did not err in reversing it as being arbitrary and capricious. Therefore, we find no error.

## II.

*Whether the trial court's entry of certain findings of fact was erroneous?*

■ The State attacks the following findings of fact entered by the trial court:

15. Lockdown presents a dangerous situation within the Prison and the reassignment of [Van Ulzen] to positions normally performed by correctional officers brought him into contact with inmates which potentially posed a threat to his safety.

16. Reassignment of [Van Ulzen] during lockdown undermined and impaired his professional credibility and hindered the performance of his regular responsibilities.

The State argues the trial court erred by reweighing the evidence and substituting its judgment for that of the Commission in entering these findings.

Van Ulzen argues that the trial court entered these findings in establishing that he was prejudiced by the Commission's erroneous application of law. He asserts the trial court—in conducting its judicial review of agency decisions—may make a determination that the agency action preju-

diced him in setting aside that agency action, citing IND.CODE 4–21.5–5–15.

The prejudice suffered by Van Ulzen as a result of the erroneous agency action is manifest. The effect of the Prison's policy was to demote Van Ulzen—as that term is defined within I.C. 4–15–2–24—without adhesion to prescribed procedures.

Therefore, the trial court's findings set out above that pertain to the prejudice suffered by Van Ulzen with respect to the Prison's reassignment policy amount to mere surplusage. Trial court findings that amount to mere surplusage cannot constitute the basis of reversible error. *Donovan v. Ivy Knoll Apartments Partnership* (1989), Ind.App., 537 N.E.2d 47. Therefore, we find no error.

## III.

*Emergency Substitution and Estoppel*

■ For the first time on appeal, the State argues that it was entitled to transfer Van Ulzen on an emergency basis pursuant to 31 IAC 2–7–4(a) which reads as follows:

When an emergency makes it impossible to fill a position in the classified service under any other provision of the State Personnel Act IC 4–15–2, an appointing authority, in order to prevent stoppage of public business or loss or serious inconvenience to the public, may appoint any qualified person to the position, but notice shall immediately be given of the appointment to the director. Any such person shall be employed only during the emergency and for a period not exceeding ten (10) days. A vacancy of which the appointing authority has had reasonable notice, or an employment condition of which he had, or might with due diligence have had, previous knowledge, shall not be considered an emergency under which such emergency appointment may be made. No emergency appointment shall be renewed.

We interpret 31 IAC 2–7–4(a) as permitting the State to hire persons to fill vacancies on a temporary basis in emergency situations without compliance with the usual

procedures prescribed for hiring. We do not believe the "emergency hiring" regulation may be reasonably construed to permit the State to demote an employee during an emergency. Moreover, the State has failed to assert or present evidence that a lockdown constitutes an emergency situation. On the contrary, the State argued at the administrative hearing below that the prison was safer during lockdowns because of increased security measures.

██ Also, for the first time on appeal, the State argues that Van Ulzen is estopped from complaining about the Prison's substitution policy. The State asserts that Van Ulzen received a memorandum in 1980 informing him of the substitution policy. The State further asserts that Van Ulzen was informed upon his initial employment with the State that prison security was one of his primary responsibilities. Therefore, the State urges us to conclude that Van Ulzen is estopped from bringing this action. We note that Van Ulzen has diligently pursued his claim through the system for approximately ten (10) years. *Van Ulzen*, 456 N.E.2d 459. Under these circumstances, we do not believe that the State's claim that Van Ulzen is somehow estopped from asserting his claim has much merit.

However, we have discussed the merits of the State's eleventh hour attacks only in passing. As a court of review we do not consider issues on appeal that were never before raised and therefore were never ruled upon by the administrative body. *National Rural Utilities Cooperative Finance Corp. v. Public Service Comm'n of Indiana* (1988), Ind.App., 528 N.E.2d 95. At this juncture, we may not grant the State any relief pursuant to either its "emergency substitution" or its "estoppel" theory. Therefore, we find no error.

Judgment affirmed.

SHIELDS, P.J., and CONOVER, J., concur.

---

1. This case was reassigned to this office on    January 29, 1991.