**LTV STEEL COMPANY, Appellant–Respondent,**

v.

**Kenneth ZELLER, In His Capacity as the Commissioner of the Indiana Department of Labor, Appellee–Petitioner.**

No. 49A04–9612–CV–512.

Court of Appeals of Indiana.

Oct. 30, 1997.

Rehearing Denied Jan. 12, 1998.

S.R. Born, George Norwood, Ice Miller Donadio & Ryan, Indianapolis, for Appellant–Respondent.

Jeffrey A. Modisett, Attorney General, Rafal Ofierski, Deputy Attorney General, Indianapolis, for Appellee–Petitioner.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

LTV Steel Company appeals the trial court order reversing a decision of the Board of Safety Review on safety orders entered against LTV Steel by the Indiana Department of Labor. We reverse.

### FACTS

Between April 11 and August 15, 1991, the Indiana Department of Labor ("DOL")/Occupational Safety and Health Administration ("IOSHA") conducted an inspection of the LTV Steel Company in East Chicago ("LTV Steel"). On September 23, 1991, the IOSHA Director issued two safety orders specifying a series of violations of Indiana's Occupational Health and Safety Act at LTV Steel and directing LTV Steel to abate the violations and pay fines.

On October 10, 1991, LTV Steel filed a petition with the Board of Safety Review ("Board") to contest the safety orders. An ALJ was appointed. On April 1, 1993, LTV Steel filed a motion for summary judgment[1] contending that the inspection and its resulting orders were invalid because the inspector had a statutorily prohibited conflict of interest when he conducted the investigation.

---

1. Ind.Code 4–21.5–3–23 provides that in administrative adjudicatory proceedings, after an ALJ has been assigned, a party may submit a motion "supported with affidavits or other evidence" for summary judgment. The statutory procedure parallels that set out in Ind.Trial Rule 56.

The motion cited Indiana's conflict of interest statute. LTV Steel further designated to the ALJ materials indicating the following. Inspector Harvey French conducted the LTV Steel inspection. French had been a UAW union employee of A.M. General Corporation ("AM General") in Mishawaka for over seven years when he was laid off in 1989. French remained on layoff status after commencing employment with IOSHA in 1990. French was offered a "recall" to employment at AM General on August 8, 1991, waived his "recall rights" for sixty days, and resigned from AM General on October 28, 1991. AM General was owned by The LTV Corporation at the time French was laid off and at the time he signed the resignation. The LTV Corporation also owned LTV Steel.

DOL opposed LTV Steel's motion, contending that the facts of French's situation did not constitute a violation of the conflict of interest statute. Further, DOL submitted designated evidence to the ALJ showing that upon French's initial visit to LTV Steel he had inquired about any connection between AM General and LTV Steel. LTV Steel's safety director explained the connection and "stated that he did not have any problems in this respect" and French "should proceed with the inspection." (R. 382).

The ALJ denied LTV Steel's motion for summary judgment. The ALJ held evidentiary hearings and entered a recommended decision on April 4, 1994. The ALJ recommended most of the violations be upheld by the Board but recommended the violation concerning a woman's fall into a tank of chromic acid (over which a grating "was not properly bolted down") be downgraded from "knowing" to "serious." (R. 277). Both LTV Steel and DOL filed objections to the recommended decision. LTV Steel also continued to press its summary judgment argument. After a hearing, the Board remanded the matter to the ALJ for more specific findings of fact and conclusions of law about the specific violations. The ALJ issued a second (more detailed) recommended decision on December 29, 1994. Again, both LTV Steel and DOL filed objections, and LTV Steel renewed its summary judgment argument. The Board issued its final decision on February 24, 1994, concluding as a matter of law that French's inspection was in violation of Indiana's conflict of interest statute and, therefore, LTV Steel's motion for summary judgment "should have been granted." (R. 649).

DOL sought judicial review. After a hearing, the trial court concluded that the Board's "interpretation" of the conflict of interest statute was "contrary to law, arbitrary and capricious," and "without conformance to legal principles and procedures." (R. 1899). Therefore, the trial court set aside the Board's decision reversing the ALJ's denial of LTV Steel's motion for summary judgment and remanded the case to the Board.

## DECISION

LTV Steel frames a series of challenges to the order of the trial court. All ultimately require we determine whether the trial court erred in holding that the Board's interpretation of the conflict of interest statute was contrary to law.

As LTV Steel correctly notes, *Peabody Coal Co. v. Indiana Dep't of Natural Resources*, 629 N.E.2d 925, 928 (Ind.Ct.App. 1994,) *aff'd.* 664 N.E.2d 1171 (Ind.1996), describes the standard to be applied when we review a summary judgment ruling by an administrative agency.

The function of the trial court on the judicial review of administrative determinations is limited to a determination of whether the agency possessed jurisdiction over the matter and whether the order was made in accordance with the proper legal procedure, was based upon substantial evidence, and did not violate any constitutional, statutory, or legal principle. The scope of judicial review of administrative determinations is limited to the consideration of whether there was substantial evidence to support the finding or order of the administrative body and whether or not the action constitutes an abuse of discretion or is arbitrary and capricious as revealed by uncontradicted facts. The burden of proving an administrative action was an abuse of discretion or arbitrary and capricious falls upon the party attempting to upset the administrative order. The Court of

Appeals will not substitute its opinion for that of an agency concerning matters within the scope of that agency's discretion and authority.

Courts that review administrative determinations, at both the trial and appellate level, are prohibited from reweighing the evidence or judging the credibility of witnesses and must accept the facts as found by the administrative body. However, we need not accord the same degree of deference to an agency's conclusion on a question of law. Law is the province of the judiciary. Our constitutional system empowers the courts to draw legal conclusions and accordingly the court in its function of judicial review of an administrative action may set aside an agency determination that is not in accordance with law.

An interpretation given a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight; however, an agency's interpretation of a statute which is incorrect is entitled to no weight. While evidence before an administrative agency will not be reweighed by the reviewing court, where the agency's finding is contrary to law, it shall be reversed. If an agency misconstrues a statute, there is no reasonable basis for the agency's ultimate action and the trial court is required to reverse the agency's action as being arbitrary and capricious.

*Id.* (citing *State Prison & State Employees' Appeals Comm'n v. Van Ulzen,* 567 N.E.2d 1164, 1166–67 (Ind.Ct.App.1991), *vacated on other grounds,* 582 N.E.2d 789 (Ind.1991)).

LTV Steel claims the trial court "misunderstood its role as an appellate tribunal and applied the wrong standard of review." LTV Steel's Brief at 7. Specifically, LTV Steel contends that the trial court should have accepted the Board's factual findings inasmuch as substantial evidence supported them, instead of "ma[king] up its own." *Id.*

The facts found by the Board, and cited by LTV Steel, are that French inspected LTV Steel between April 11 and August 15, 1991; that French had been "an employee of another LTV business unit" before beginning to work for IOSHA in May of 1990; that he had

"remained on layoff from" AM General; layoff status allowed him "to accrue seniority status which would directly affect pension benefits upon retirement;" and French "resigned his employment" from A.M. General on October 28, 1991. (R. 648). In its brief, LTV Steel directs us to substantial evidence supporting each of these findings. DOL does not argue that the findings are unsupported but rather "that the trial court vacated the Board's decision because the Board's '*interpretation* of Ind.Code § 4–2–6–9(a), § 4–2–6–1(9)' was wrong, and not because the Board's factual findings were deficient." DOL's Brief at 9 (emphasis in original). Therefore, consistent with our standard of review, we will use the facts found by the Board in considering whether the Board correctly determined that French's inspection violated the conflict of interest statute.

The Board held as follows:

Indiana Code at I.C. 4–2–6–9(a) prohibits a state officer or employee from participating in a decision in which the State Officer or employee has a financial interest. I.C. 4–2–6–1(a [9]) specifically includes "an interest arising from employment" in its definition of financial interest.

The inspection at issue was conducted by a State of Indiana employee who maintained a "financial interest" in the respondent's corporation. While that relationship may have been arguably tenuous, it nonetheless existed. The actions of respondents' health and safety personnel cannot waive the fact that the inspection, performed by this inspector, was improper.

The Commissioner [of DOL] argues that the relationship between LTV Steel and [A.M. General] is almost non-existent, that it is merely a "tax group." The fact is, both units were owned by LTV and thus they are, or at least were at the time of the inspection, one in our eyes.

(R. 649).

We begin our analysis with the statute. At the time LTV filed its motion, Ind.Code 4–2–6–9(a) provided that a "state officer or employee may not participate in any decision or vote of any kind in which the state officer or the employee, or that individual's spouse

or unemancipated children has a financial interest." The legislature further defined "financial interest" as meaning

an interest:

(A) Distinct from that:

(i) Of the general public; or

(ii) As a state employee;

(B) In a purchase, sale, lease, contract, option, or other transaction between an agency and any person;

(C) Involving property or services; and

(D) In which a state officer of an employee or that individual's spouse or unemancipated children may gain a benefit of two hundred fifty dollars ($250) or more.

The term includes an interest arising from employment or prospective employment for which negotiations have begun.

I.C. 4–2–6–1(9).

In 1974, our legislature added "Chapter 6. Ethics and Conflicts of Interest" to Indiana Code's Title 4, State Administration, creating an ethics commission. ("Commission"). *See* Acts 1974, P.L. 4, Sec. 2. In 1987, the legislature directed the Commission to adopt rules establishing a code of ethics for the conduct of state business. *See* P.L. 13–1987, Sec. 6. In 1988, the Commission adopted a code of ethics and declared the purpose therefor to be the setting of

ethical standards for the official conduct of the officers and employees in the executive and administrative branches of state government, so that the general public will have confidence that their performance in office is always conducive to the public good. This code (40 IAC) should promote the principle that public office is a public trust where government is based upon the consent of its citizens who are entitled to have complete confidence in the integrity of their government. Thus, the business of the state should be conducted in such a manner as to reassure the citizens of Indiana that the character and conduct of its officials and employees are above reproach.

40 Ind.Admin.Code (IAC) 2–1–3 (1992). The code of ethics' policy statement proclaimed that "its foundation" was

that state officers and employees must be impartial in the discharge of their duties; that decisions and policy must not be made outside of the proper channels of state government; that public office must not be used for private gain; and that public confidence in the integrity of government is essential to the exercise of good government.

40 I.A.C. 2–1–5(a) (1992). The policy statement continued by providing that

no actions, transactions or involvements shall be performed or engaged in by an officer or employee which might reasonably serve to raise the questions of possible "conflict of interest" in the minds of the general public.

*Id.* at (b).

The code of ethics defines a "conflict of interest" to mean

a situation in which a state officer's or employee's private interest, usually of a financial or economic nature *may* influence his judgment in the performance of his public duty.

40 I.A.C. 2–1–4 (1992) (emphasis added). The code then prohibits a conflict of interest such that

[i]f in the course of the discharge of his official duties as a state officer or state employee he shall find himself in a position where his ... economic interest shall be substantial and material and in conflict with the interest of the people of this state, then such state officer or state employee shall be expected to resolve such conflict.

40 I.A.C. 2–1–9 (1992), pursuant to the provisions of 40 I.A.C. 2–1–10. When an employee "in the discharge of his official duties may be required or is required to take action which may be prohibited" by the code of ethics, or which "may result in a conflict of interest," the state employee "shall not take such action" and must report the matter as prescribed by the code of ethics. 40 I.A.C. 2–1–10(a) (1992).

■ The legislature authorized the Commission to promulgate the code of ethics rules. Rules issued pursuant to legislative authorization have the effect of law. *See Whitley County Rural Elec. v. Lippincott,*

493 N.E.2d 1323, 1327 (Ind.Ct.App.1986) (citing *Indiana State Bd. of Health v. Lakeland Disposal Serv., Inc.,* 461 N.E.2d 1145, 1146 (Ind.Ct.App.1984); *Wallace v. Dohner,* 89 Ind.App. 416, 165 N.E. 552 (1929)). Moreover, the ethical standard announced in the Commission's rules reflects the common law principle that a public official may not use his official power to further his or her own interests, *Indiana State Ethics Comm'n v. Nelson,* 656 N.E.2d 1172, 1175 (Ind.Ct.App.1995) (citing *Bullock v. Robison,* 176 Ind. 198, 93 N.E. 998, 1001 (1911)), because "a person cannot serve two masters at the same time and the public interest should not be entrusted to an official who has a *pecuniary, personal or private interest* which is or may be in conflict with the public interest." *Id.* (citing *Housing Auth. of City of New Haven v. Dorsey,* 164 Conn. 247, 320 A.2d 820, 822 (1973), *cert. denied,* 414 U.S. 1043, 94 S.Ct. 548, 38 L.Ed.2d 335) (emphasis added). The state has a substantial and compelling interest in restricting unethical practices of its employees and public officials not only for the internal integrity of the administration of government, but also for the *purpose of maintaining public confidence in state and local government. Id.* (citing *State v. Nipps,* 66 Ohio App.2d 17, 419 N.E.2d 1128, 1132 (1979)) (emphasis added).

■ The Board determined that French's inspection of LTV Steel was "improper" under the conflict of interest statute. Our analysis of the statute, its rules as found in the code of ethics, and the common law lead us to conclude that its application to the action of an individual state employee requires asking the critical question posed by Justice Shepard in deciding whether to participate in the *Tyson v. State* appeal, to wit: whether his impartiality might reasonably be questioned. *Tyson v. State,* 622 N.E.2d 457, 459 (Ind.1993). We agree with the Board that under the facts found by the Board, French's impartiality might have reasonably been questioned. Because his involvement "might reasonably serve to raise [ ] questions of possible 'conflict of interest' in the minds of the general public," 40 I.A.C. 2–1–5(b), his participation in the decision regarding LTV Steel was improper.

We briefly address several of DOL's arguments in support of the trial court's reversal of the Board's decision. First, DOL directs us to the statutory definition of "employer" as an entity from which the state employee received more than 33% of the employee's "nonstate income in a year." I.C. 4–2–6–1(8). Since "LTV Steel was *never* French's employer under this controlling definition," and "no evidence" indicates that LTV Steel would have furnished the requisite 33% of his salary had French returned to AM General pursuant to the recall, DOL posits, there was no basis for the Board to find French had a financial interest which prohibited his participation in the decision to issue the safety order to LTV Steel. DOL's Brief at 12, 13.

DOL next contends that *McQuade v. Draw Tite, Inc.,* 659 N.E.2d 1016 (Ind.1995), wherein our supreme court held that an employee of a subsidiary is not an employee of the parent company, must control our decision here. *McQuade* considered the question of whether an employee of a subsidiary may bring a tort action against the parent company for injuries sustained at work notwithstanding the exclusivity provisions of Indiana's Worker's Compensation Act. According to DOL, under the "separate corporate entity" rule of *McQuade,* French could not be considered an employee of either The LTV Corporation or LTV Steel.

■ Both of DOL's arguments overlook the statute's parallel prohibition of a state employee's participation in a decision in which the employee has a "distinct" personal financial interest "[i]nvolving services." I.C. 4–2–6–1(9). Thus, application of the statute to this situation does not necessarily turn solely upon which corporate entity might have provided a certain level of salary to French. Furthermore, *McQuade* involved the relationship between an employee and a third party when applying a statutory scheme for redressing personal injuries sustained by an individual in an employment setting. We do not find its reasoning apposite to our consideration of how to apply a statute which concerns the conduct of state business and is designed to protect the public at large and to assure that state officers and employees are impartial in the discharge of their duties.

When we interpret a statute, our foremost objective is to determine and effect legisla-

tive intent. Statutes must be construed to give effect to legislative intent, and counts must give deference to such intent whenever possible. Thus, courts must consider the goals of the statute and the reasons and policy underlying the statute's enactment.

*JKB, Sr. v. Armour Pharmaceutical Co.*, 660 N.E.2d 602, 605 (Ind.Ct.App.1996) (citations omitted). Herein, we find the legislature's intent to lie in the repeated theme of the conflict of interest law—that state employees conducting public business shall "do so in a manner as to reassure the citizens of Indiana that the character and conduct of its ... employees are above reproach," 40 I.A.C. 2–1–3 (1992). Accordingly, we do not believe that an analysis of corporate structure and application of the "separate corporate entity" rule of *McQuade* is appropriate in this case, when the question is whether a state employee's relationship with one subsidiary of a corporation constitutes a "financial interest" forbidding his conduct of state business with another subsidiary of that same corporation. Therefore, we will not disturb the Board's conclusion that "in [its] eyes," the relationship between LTV Steel and AM General prohibited French, as a state employee, from participating in a determination of whether LTV was in compliance with the applicable safety regulations.

■ DOL's appellate brief also claims we must address the issue of whether "Indiana's courts have subject matter jurisdiction over claims by private parties of violations" of the conflict of interest statute, an issue "also ... viewed as whether LTV has standing to raise a potential violation" of the conflict of interest statute. DOL's Brief at 6. Subject matter jurisdiction refers to the power to hear and determine a general class or kind of case. *State ex rel. Hight v. Marion Superior Court*, 547 N.E.2d 267, 269 (Ind. 1989). DOL presents neither argument nor authority indicating that Indiana courts are without power to hear a claim alleging violation of the conflict of interest statute. Standing is a judicial doctrine which "focuses on whether the complaining party is the proper person to invoke the court's power; it is designed to assure that litigation will be actively and vigorously contested." *Jajuga v.*

*Lukens,* 631 N.E.2d 920, 922 (Ind.Ct.App. 1994). Standing requires the complaining party to "demonstrate a personal stake in the outcome of the lawsuit and show that he has sustained or was in immediate danger of sustaining a direct injury as a result of the conduct at issue." *Id.* Because LTV had a personal stake in the outcome of its claim that the conflict of interest statute had been violated and was threatened with a direct injury as a result of the conduct it alleged to be unlawful, LTV had standing to pursue its claim that the statute had been violated.

■ Finally, DOL argues that the trial court's reversal of the Board's decision may be upheld because the trial court also held that LTV had waived the right to raise French's conflict of interest when it "encourag[ed] French to complete his investigation." (R. 1898). Essentially, according to DOL, a person doing business with the state could waive the public official's conflict of interest. To this contention, we echo LTV's response: because the statute prohibiting a state official or employee having a conflict of financial interest from taking action in such a matter *is for the protection of the public,* the conflict cannot be waived casually by the parties. Waiver is the voluntary and intentional relinquishment of a known right. *Lake County v. State ex rel. Manich,* 631 N.E.2d 529, 533 (Ind.Ct.App.1994). The evidence indicated no more than a casual discussion between an employee of IOSHA and one of LTV Steel. To allow this single encounter to exempt future inspection of LTV Steel by French from the conflict of interest statute would render the statute meaningless. Moreover, nothing in the conflict of interest statute suggests that it contemplates allowing a state employee and the entity with which the employee is conducting business to waive a conflict and proceed with an action otherwise prohibited.

The trial court's decision is reversed, and we remand with instructions to affirm the Board's decision.

RILEY and NAJAM, JJ., concur.